O'NEAL FORD, INC., *v.* Joann EARLY

CA 84-88                                                         681 S.W.2d 414

Court of Appeals of Arkansas
Division II
Opinion delivered January 2, 1985

*Frierson, Walker, Snellgrove & Laser,* by: *Malcolm Culpepper,* for appellant.

*Wilson, Grider & Castleman,* for appellee.

JAMES R. COOPER, Judge. The appellee purchased a used 1980 Ford Granada from the appellant on May 12, 1982. The appellee, at the time of the sale, stated to the appellant's salesman that she needed a dependable car to drive to and from work, a distance of approximately 200 miles per week. While test driving the car before purchasing it, the appellee noticed a "rumping" sound in the rear of the car, and she was assured by the appellant's salesman that the noise could be attributed to the car's radial tires. The appellee traded in her 1977 model Granada, receiving a $1,500.00 credit, and financed the remainder of the purchase price, $4,250.00, through Ford Motor Credit Corporation. The appellee testified that she drove the automobile back to her home, went to a service station, and was informed that the car was two quarts low on engine oil. The next day, the appellee's daughter drove the car back to appellant to have an AM/FM radio installed. On her return trip to Maynard, the appellee's daughter noticed a "pinging" sound in the vehicle's engine.

On Friday, May 14, the appellee returned the car to the appellant because of her concern about this "pinging" noise. The appellant had a mechanic check the automobile, and then produced a list of needed repairs which appellant offered to make pursuant to the Limited Car Use Guarantee that appeared in the contract of sale entered into by both parties. The guarantee, in rather confusing language, stated that it applied to the car's motor, rear end and transmission only, and called for the appellee and the appellant to equally share the costs of any parts and labor necessary to repair the automobile. The appellee, being dissatisfied with the situation, requested that the appellant return to her the 1977 Granada which she had traded. The appellant informed her that this car had been sold. The appellee then requested that her $1,500.00 credit on the trade-in be applied to another

vehicle, which the appellant also refused. The appellee then left the appellant's business, but returned the next Monday in an attempt to trade the 1980 model Granada, but testified that the appellant offered her only $4,200.00 for the car if she traded for another. After consulting with an attorney, the appellant had the attorney send a letter notifying the appellant of her revocation of acceptance of the automobile.

The appellee then filed suit on July 15, 1982, seeking to enforce her revocation of acceptance and a return of the payments made by her towards the purchase of the automobile, as well as incidental and consequential damages, cost and attorney's fees.

At trial, the appellee testified as to the various problems reported by the appellant's mechanic when she returned the vehicle. The evidence disclosed that the car needed valve work only three days after the appellant sold the car to the appellee, needed relocation of the radiator and had various other problems which she could not recall. The jury found that the automobile which the appellant sold to the appellee was nonconforming and that such nonconformity substantially impaired the value of the automobile to the appellee, that the appellant's revocation of acceptance occurred within a reasonable time and thus she was entitled to recover her purchase price along with her incidential damages. The appellant asserts that the trial court erred in failing to grant its request for a directed verdict. We disagree with the appellant, and affirm.

The appellant argues for reversal that a directed verdict was proper below because the appellee failed to introduce any proof which would entitle her to revoke her acceptance of the automobile. We disagree. The appellee's testimony about the required repairs was sufficient proof that the automobile was nonconforming pursuant to the provisions of Ark. Stat. Ann. § 85-2-608 (Add. 1961). This section of the Uniform Commercial Code provides as follows:

Revocation of acceptance in whole or in part. —(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially

impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the sellar's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

It is clear from a reading of this Code section and the cases applying it that the nonconformity must substantially impair the value to the buyer. The question whether goods are nonconforming and whether a revocation of acceptance was given within a reasonable time are questions of fact. *Dopieralla* v. *Ark. La. Gas Co.,* 255 Ark. 150, 499 S.W.2d 610 (1973); *Frontier Mobile Home Sales* v. *Trigleth,* 256 Ark. 101, 505 S.W.2d 516 (1974). It is obvious from the jury's verdict that this question was resolved in the appellee's favor, and our review of such decisions is controlled by the substantial evidence rule. We find substantial evidence in the testimony of the appellee, the only witness to testify at the trial below, to support the jury's finding.

Encompassed in the appellant's motion for a directed verdict was its argument that the Limited Car Use Guarantee, which the appellee signed, limited her recourse against the appellant in the event of a nonconformity in the automobile. We cannot agree. The guarantee may have limited the appellee's other warranties provided for by the Uniform Commercial Code, or remedies therein for the breach of such warranties, but in no way can be construed to

have foreclosed her right to revoke her acceptance within a reasonable time of discovery of a nonconformity in the automobile. As stated in *Blankenship* v. *Northtown Ford, Inc.,* 420 N.E.2d 167 (Ill. App. 1981):

> In this case, the evidence unequivocally demonstrated that the substantially defective nature of the vehicle clearly impaired its value to the plaintiffs and thus revocation of acceptance is appropriate even if the dealer has properly disclaimed all implied warranties.

See also, *Ford Motor Credit Company* v. *Harper,* 671 F.2d 1117 (8th Cir. 1982).

Therefore, we hold that the appellee's agreement to limit her warranty rights under the Code did not affect her right to revoke acceptance. The trial court correctly denied the appellant's motion for a directed verdict, and, since the jury's verdict is supported by substantial evidence, we affirm.

Affirmed.

GLAZE and MAYFIELD, JJ., agree.