## WEB PRESS SERVICES CORPORATION *v.*
## NEW LONDON MOTORS, INC.
### (12832)
### (12833)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued December 5, 1986—decision released May 5, 1987

*Jacques J. Parenteau,* with whom, on the brief, was *Mary E. Holzworth,* for the appellant (plaintiff).

*Andrew Brand,* with whom, on the brief, was *Kerin M. Woods,* for the appellee (defendant).

DANNEHY, J. These two appeals were consolidated for argument. They raise identical questions. The appeal in Docket No. 12832 must be dismissed because it was prematurely brought. The appeal in Docket No. 12833 will be separately considered.[1]

The plaintiff brought this action against the defendant, a corporation engaged in selling new and used automobiles. The complaint was in five counts. In the first count the plaintiff alleged that in July, 1984, the defendant sold to the plaintiff a used 1980 model Ford Bronco (the vehicle), to be used for off-the-road driving. The plaintiff paid the purchase price and took delivery of the vehicle. Mechanical defects developed in the vehicle almost immediately, substantially impairing the vehicle's value to the plaintiff. The defendant several

---

[1] The first appeal (Docket No. 12832) was filed on July 10, 1985, following the trial court's issuance of a written memorandum of decision. The second appeal (Docket No. 12833) was filed on September 4, 1985, after judgment was entered. Because the first appeal was brought before final judgment was entered, it may be dismissed. See Practice Book §§ 4000, 4056 (formerly §§ 3000, 3110).

times attempted to remedy those defects, but without success. In October, 1984, the plaintiff tendered back the vehicle to the defendant and notified the defendant that it was revoking its acceptance pursuant to General Statutes § 42a-2-608.[2] The plaintiff requested the return of the purchase price. The defendant refused to return the purchase price.

The four other counts claimed damages by specific reference to the first count. The second count sought damages on the ground that there was a breach of an implied warranty of merchantability, the third count, for breach of an implied warranty of fitness for a particular purpose, and the fourth count, for breach of express warranties. The fifth count sought damages on the ground that the defendant had engaged in unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The defendant, in its answer, denied most of the material allegations of the complaint and also set up a special defense charging that any mechanical defects in the vehicle resulted from the plaintiff's misuse and abuse of the vehicle.

At trial, there was evidence to show that during the time the plaintiff possessed the vehicle, it experienced various mechanical problems. These problems included leakage and a noise from the left rear of the vehicle and problems with the brakes, muffler, power steering and air conditioning. Most of these difficulties were remedied by ordinary repairs which the defendant performed without cost to the plaintiff. The trial court,

---

[2] "[General Statutes] Sec. 42a-2-608. REVOCATION OF ACCEPTANCE IN WHOLE OR IN PART. (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

in fact, characterized these problems as "mostly minor." Clearly, however, a structural defect in the rear axle was hardly minor. The vehicle continued to present problems to the plaintiff, especially on the left rear side. The defect was not detected by the defendant, but was later discovered upon inspection by a certified mechanic.

The court's basic finding was that the plaintiff had failed to prove that the defendant had violated General Statutes § 42a-2-608, had breached any express or implied warranties or that the defendant's actions violated CUTPA.

General Statutes § 42a-2-608 provides in part that a buyer may revoke his acceptance of an item if there is a nonconformity in the item which "substantially impairs" its value to him. After considering the language of § 42a-2-608, and decisions interpreting that statute, the court concluded that the plaintiff could not revoke acceptance of the vehicle because "the defects in the vehicle did not substantially impair its value to the plaintiff." The court further found that the plaintiff had not established a breach of any express or implied warranty except to the extent that a limited warranty provision in the sales agreement had been breached. The court also concluded that the plaintiff had failed to present sufficient evidence to sustain its CUTPA claim. As to the special defense asserted by the defendant, the court found that the evidence was insufficient to prove abuse or misuse of the vehicle by the plaintiff. The court subsequently heard evidence as to the cost of repairing the defective axle on the vehicle and awarded damages of one half of the cost of repairing the axle, or $300, plus costs to the plaintiff. The plaintiff appeals from this judgment. We turn then to the attacks upon the judgment made by the plaintiff.

The general rule with regard to appeals of this nature is that the judgment appealed from will not be reversed

in matters of fact unless it clearly appears to be erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). The plaintiff first contends that the trial court committed reversible error in concluding that since the vehicle was "used," its numerous defects did not substantially impair the value of the vehicle to the plaintiff. Particularly, it is urged that the trial court erred in applying a standard for substantial impairment different from the standard applicable to new vehicles. We disagree.

After the close of the evidence, the trial judge solicited the views of counsel regarding the issue of revocation of acceptance. Specifically, the court inquired whether § 42a-2-608 was applicable to *used* motor vehicles. The court invited counsel to submit briefs on this issue. Counsel accepted the invitation. In its memorandum, the court noted that our jurisdiction has not determined whether the revocation provision of the Uniform Commercial Code applies to the sale of used vehicles, but that other jurisdictions have concluded that the Uniform Commercial Code does apply. See, e.g., *O'Neal Ford, Inc.* v. *Early,* 13 Ark. App. 189, 681 S.W.2d 414 (1985); *Jackson* v. *H. Frank Olds, Inc.,* 65 Ill. App. 3d 571, 382 N.E.2d 550 (1978). Accordingly, the court concluded that "§ 42a-2-608 may be applied to the sale of a used automobile."

Section 42a-2-608 (1) provides in pertinent part that "[t]he buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it . . . (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Whether the value of goods has been substantially impaired by a nonconformity is a question of fact. *Conte* v. *Dwan Lincoln-Mercury, Inc.,* 172 Conn. 112, 121, 374 A.2d 144 (1976). The test for substantial impair-

ment is both subjective and objective; it focuses first, on the needs and circumstances of the particular buyer seeking to revoke, and then considers whether, from an objective standpoint, the value of the goods to the buyer has in fact been impaired. See *Keen* v. *Modern Trailer Sales, Inc.*, 40 Colo. App. 527, 578 P.2d 668 (1978); *Jorgensen* v. *Pressnall*, 274 Or. 285, 545 P.2d 1382 (1976).

In the present case, the court noted that all of the problems with the vehicle except for the defective axle, which was not immediately discovered, had been corrected at the defendant's expense. The court reviewed the language of § 42a-2-608, articulated both the subjective and objective components of the substantial impairment test, and concluded that the defects in the vehicle did not substantially impair its value to the plaintiff. The court also found that the plaintiff's acceptance of the vehicle had not been induced by the seller's assurances. Although the court noted that *Conte* v. *Dwan Lincoln-Mercury, Inc.*, supra, involved a new vehicle whereas the one in the present case was used, there is nothing in the court's memorandum which indicates that it utilized a test for substantial impairment different from that employed in the *Conte* decision. Although the court stated that a purchaser of a used vehicle does not have the same expectations as one who buys a new vehicle, this passing observation was made in the context of the court's discussion of whether the plaintiff's acceptance was induced by the seller's assurance. It was not a part of the court's discussion of the substantial impairment test. In short, the record does not indicate the use of an erroneous standard by the trial court.

We also hold that the court's application of the substantial impairment test to the facts of the present case was not clearly erroneous. There was testimony that during the period in which the plaintiff possessed the

vehicle, it was used for transportation connected with the plaintiff's business, pleasure trips to Canada and New Hampshire, and off-the-road driving on the beach.

The plaintiff's next assignments of error involve the court's failure to find a breach of either an express or implied warranty. The court found that the plaintiff had failed to establish any breach "except for the limited warranty as to certain parts for a period of thirty days." Before addressing the merits of the plaintiff's claim regarding express and implied warranties, we must first decide whether the court's consideration of the limited warranty was proper.

In its memorandum, the court noted that the purchase order for the vehicle, which consisted of a one page document with information printed on both sides, contained the following warranty provision: "This motor vehicle is guaranteed by a limited warranty for 30 days . . . on a 50-50 basis on motor, transmission and differential only, half of list price of parts and labor to be borne by seller and half to be paid by purchaser . . . ." On the reverse side of the purchase order, the defendant "disclaim[s] all warranties, either express or implied, including any implied warranty of merchantability." The disclaimer provision appears in large print under the heading "Additional Terms and Conditions." The court invoked the limited warranty provision in its order for relief and awarded the plaintiff $300, or one half of the stipulated cost of repairing the axle. It should be noted that the court did not rely on the disclaimer or limited warranty provisions to defeat the plaintiff's claim for revocation of acceptance; rather, the court found that the substantial impairment test for revocation, as we have already indicated, had not been satisfied.

The plaintiff contends that the court's consideration of the limited warranty was erroneous because there

was no proof offered at trial as to the limited warranty. We note, however, that the limited warranty was part of the purchase order which was introduced in evidence by the plaintiff. The defendant made no objection to its introduction and in fact relied in part on the limited warranty provision in its posttrial brief. The plaintiff had the opportunity to and in fact did respond to the invocation of the provision in its posttrial brief. The record does not reveal that any motion for reconsideration based on an erroneous invocation of the limited warranty provision was presented to the trial court.

The plaintiff also argues that the court's consideration of the limited warranty was erroneous because the defendant's answer does not allege a special defense of a limited warranty. The defendant's response is that its general denial of the allegations made in the plaintiff's complaint was sufficient to raise the defense of the limited warranty. Even if we assume that the limited warranty should have been specially pleaded, the plaintiff, as we pointed out above, exhibited the purchase order containing the warranty as evidence upon which it relied to establish its claim. There was no limitation on its use. It is well established that "[t]he failure to file a special defense may be treated as waived when it appears that no objection was raised to the offer of evidence on the issue at trial." *Frager* v. *Pennsylvania General Ins. Co.*, 161 Conn. 472, 479, 289 A.2d 896 (1971); see *Pepe* v. *New Britain,* 203 Conn. 281, 286, 524 A.2d 629 (1987); *Damora* v. *Christ-Janer,* 184 Conn. 109, 112, 441 A.2d 61 (1981).

We are also unpersuaded by the plaintiff's assertion that even if consideration of the limited warranty was proper, an award of damages under the provision was erroneous because the provision failed to provide adequate relief to the plaintiff. Under General Statutes § 42a-2-719 (2), a party may avail itself of remedies provided by the code "[w]here circumstances cause an

exclusive or limited remedy to fail of its essential purpose . . . ." See *Conte* v. *Dwan Lincoln-Mercury, Inc.*, supra, 123. It is the plaintiff's position that the limited warranty failed to provide adequate relief to the plaintiff and that the warranty therefore failed of its essential purpose. We disagree.

Both parties recognize that a seller has a right to attempt to cure defects. See § 42a-2-508 (1). The trial court noted that the defendant did, in fact, repair all of the defects in the vehicle except for the defective axle which was not immediately discernible. The plaintiff acknowledged at oral argument that when the defective axle was discovered, it made no attempt to have the axle repaired by the defendant but simply sought the return of the purchase price of the vehicle. We have previously stated that " '[o]ne policy of the Code is to encourage the parties to work out their differences and so to minimize losses resulting from defective performance.' White & Summers, [Uniform Commercial Code], § 8-2 n.15." *Conte* v. *Dwan Lincoln-Mercury, Inc.*, supra. While the right to cure defects does not last indefinitely; see id., 122; the defendant here was not allowed an opportunity to repair the axle once the defect was brought to its attention. The court could reasonably have determined that an award of one half of the cost of repairing the axle would be an adequate and fair form of relief for the plaintiff and would best promote the code's policy of minimizing losses. We recognize that the plaintiff did not specifically request the form of relief ordered by the trial court. The plaintiff, however, did request in its prayer for relief "such further equitable relief as this court may deem just and proper." We conclude, therefore, that under the circumstances of this case the trial court did not commit reversible error in invoking the limited warranty.[3]

---

[3] We find nothing erroneous in the court's invocation of the limited warranty even though the thirty day period of the warranty had obviously

We next consider the plaintiff's claim that the court should have found a breach of an express warranty. According to the plaintiff, the defendant's repeated statements to the effect that the vehicle was an "excellent" and "unusual" one, and that it was in "mint" and "very good" condition, amounted to an express warranty under General Statutes § 42a-2-313 (1) (a). That section provides that an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . ." Subsection (1) (b) provides that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods conform to the description." In concluding that the defendant's statements did not amount to an express warranty, the trial court relied on *Mikula* v. *Lucibello,* 17 Conn. Sup. 360 (1951). There, the court held that words such as "[t]his car is in A-1 condition" did not create an express warranty but were merely "seller's talk." Id., 361.

The plaintiff bears the burden of proving the existence of an express warranty. The question of whether an express warranty exists is one of fact and we will not reverse a court's finding on this matter unless it is clearly erroneous. *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.,* 184 Conn. 10, 17, 441 A.2d 43 (1981). We are hard pressed to find that the court's conclusion in this case was clearly erroneous.

The Uniform Commercial Code recognizes that some statements of sellers are merely "puffing" and do not create express warranties. Section 42a-2-313 (2), for example, provides that "an affirmation merely of the

expired at the time of trial. The court pointed out that the problem with the axle occurred during the warranty period, and because the problem was not immediately detected, the vehicle was improperly repaired during the warranty period.

value of goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Drawing the line between puffing and the creation of a warranty is often difficult, but several factors have been identified as helpful in making that determination. See generally J. White & R. Summers, Uniform Commercial Code (2d Ed.) § 9-3. One such factor is the specificity of the statements made. A statement such as "this truck will give not less than 15.1 miles to the gallon when it is driven at a steady 60 miles per hour" is more likely to be found to create an express warranty than a statement such as "this is a top-notch car." Id., p. 329. Statements to the effect that a truck was in "good condition" and that a motor was in "perfect running order" have been held not to create express warranties. See *Pell City Wood, Inc.* v. *Forke Bros. Auctioneers, Inc.,* 474 So. 2d 694 (Ala. 1985); *Miller* v. *Lentine,* 495 A.2d 1229 (Me. 1985). Another factor to be considered in determining whether a statement creates an express warranty is whether it was written or oral, the latter being more likely to be considered puffing. J. White & R. Summers, supra.

The defendant in the present case made various oral statements to the effect that the vehicle was "excellent," in "mint" condition and that it was an "unusual" one. These statements certainly cannot be considered specific in nature. Moreover, the plaintiff was allowed to examine and test drive the vehicle prior to purchase. Under the facts of this case the trial court's failure to find an express warranty, except to the extent of the limited warranty discussed above, cannot be considered clearly erroneous.

The plaintiff next assigns error to the court's failure to find that the defendant breached an implied warranty of merchantability. General Statutes § 42a-2-314 (1) provides that "[u]nless excluded or modified as provided by section 42a-2-316, a warranty that the goods shall

be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . ." The parties agree that the defendant is a merchant with respect to the vehicle sold to the plaintiff. To be merchantable, goods must be, inter alia, "at least such as (a) pass without objection in the trade under the contract description . . . and (c) are fit for the ordinary purpose for which such goods are used . . . ." General Statutes § 42a-2-314 (2).

In reaching its conclusion that no implied warranty had been breached, the trial court looked to the holding in *Chamberlain* v. *Bob Matick Chevrolet, Inc.*, 4 Conn. Cir. Ct. 685, 692, 239 A.2d 42 (1967). In that case, the court found no implied warranty where the vehicle was sold "as is." The *Chamberlain* court noted the inherent difference between a new and a used car and stated that "the express or implied warranties, if any, must be reflected in the newness or antiquity of the car sold." Id., 695.

The defendant in the present case did not use an expression like "as is" in selling the vehicle to the plaintiff, and therefore the trial court's reliance on the *Chamberlain* decision was misplaced. The court's conclusion that no implied warranty of merchantability existed, however, is adequately supported by the record because the purchase order for the vehicle contained a provision expressly disclaiming any implied warranty of merchantability. This provision was conspicuously placed in large type on the reverse side of the purchase order. See General Statutes § 42a-2-316 (2). Although the trial court did not expressly rely on the disclaimer in reaching its conclusion, it did note the existence of the disclaimer provision. We cannot say, therefore, that the court's failure to find a breach of an implied warranty constituted reversible error. See *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, supra, 19.

The plaintiff contends finally that the court erred in refusing to find a violation of CUTPA, General Statutes § 42-110a et seq. CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a).[4] A plaintiff who establishes a violation of CUTPA may recover not only actual damages, but in some cases attorney's fees and punitive damages as well. See General Statutes § 42-110g (a) and (d). In enacting CUTPA, the legislature intended to create an expansive act which would provide relief to persons suffering "any ascertainable loss" as a result of an unfair or deceptive trade practice. General Statutes § 42-110g (a). To that end, the legislature expressly provided that "[i]t is the intention of the legislature that this chapter be remedial and be so construed." General Statutes § 42-110b (d).

At trial, the plaintiff attempted to show that certain statements and conduct of the defendant in selling the vehicle to the plaintiff amounted to a CUTPA violation. The trial court disposed of the plaintiff's claim summarily by stating in its memorandum simply that the plaintiff had failed to present "sufficient evidence to support its burden of proof as to violations" of CUTPA. The plaintiff attacks the trial court's disposition of its CUTPA claim on four grounds. It argues that the court erred in refusing to allow inquiry into the defendant's conduct following the final return of the vehicle, in failing to consider allegedly deceptive statements made by the defendant following the sale of the vehicle, in not permitting the plaintiff to amend its complaint, and in requiring proof that the defendant had *knowingly* made a deceptive statement. We will consider each claim in turn.

[4] For purposes of § 42-110b, a "person" includes a corporation. See General Statutes § 42-110a (3).

It is well settled that in determining whether a practice violates CUTPA, the following criteria are to be employed: " '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' *Conaway* v. *Prestia,* [191 Conn. 484, 492–93, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.8, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972) . . . ." *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 568, 473 A.2d 1185 (1984); see also *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 756, 474 A.2d 780 (1984). Thus, a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., *Sprayfoam, Inc.* v. *Durant's Rental Centers, Inc.,* 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy. See, e.g., *Sportsmen's Boating Corporation* v. *Hensley,* supra. The plaintiff here was precluded from questioning the defendant's representative, Richard Antupit, as to whether Antupit had examined the vehicle following its final return by the plaintiff, and as to whether he had sought to avoid the plaintiff. It is the plaintiff's position that it wished to introduce Antupit's testimony to show that the defendant's conduct violated the Uniform Commercial Code and/or public policy, and as such was evidence of a violation of CUTPA.

It is beyond dispute that the trial court has broad discretion in determining the relevancy and materiality of evidence. *Hardisty* v. *Hardisty,* 183 Conn. 253, 257, 439 A.2d 307 (1981). When the defendant objected to

the plaintiff's inquiry as to whether Antupit had inspected the vehicle upon its final return, the plaintiff cited General Statutes § 42a-2-608 as support for its question. The trial court noted that § 42a-2-608, which deals with revocation of acceptance, does not discuss the duties of a seller after the buyer has attempted to revoke acceptance.[5] Therefore, the provision did not provide support for the plaintiff's question. In addition, Antupit had already testified that after the return of the vehicle, he had received two letters instructing him "not to touch" the vehicle. He testified that pursuant to these instructions, he "didn't do a thing" to the vehicle. It is certainly well within the court's discretion to disallow a question which had essentially already been answered. See *State* v. *Gooch,* 186 Conn. 17, 24, 438 A.2d 867 (1982).

---

[5] The pertinent portion of the colloquy was as follows:

"Q. Now, did you do anything to confirm the things that were stated in that letter? Did you check out the rear axle?

"Mr. Brand: I object, Your Honor. What's the purpose of this?

"Mr. Parenteau: Your Honor, I'm trying to determine what they—what they did in response to the complaint, whether they attempted to confirm the condition of the vehicle and act the way they were supposed to according to the Uniform Commercial Code. I think it's relevant to that aspect of it, that parties should settle their differences themselves. If he did nothing, then let him say he did nothing.

"Mr. Brand: I don't understand what that response just meant, but I object to the question. It is not pertinent to what's in the plaintiff's complaint.

"The Court: Would you again tell me the basis for this questioning.

"Mr. Parenteau: I'm — the basis of it, Your Honor, is that the Uniform Commercial Code imposes a duty on purchasers and sellers to act in a certain way. I'm trying to determine if he acted in accordance with the policy therein; that is, to settle the disputes between the parties. I want to know if he inspected to see if we were right.

"The Court: To what are you referring in the Uniform Commercial Code? To what section?

"Mr. Parenteau: 2-608, the one we're — revocation of acceptance.

"The Court: 42a-2-608.

"Mr. Parenteau: That's correct. Right. Subsections 1 and 2 would require the seller, after he receives reasonable notice of the nonconformity of the vehicle, to take it upon himself to inspect it to determine if the goods were

The plaintiff also attempted to question Antupit regarding telephone calls made by the plaintiff to the defendant which were allegedly unreturned. Antupit testified that he could not recall whether he had received telephone calls from or had returned telephone calls to the plaintiff but that his usual practice was to return such calls. The plaintiff then started to ask "So you're not saying that [the plaintiff's representative] is lying . . . ." Upon objection by the defendant, the court disallowed further inquiry on this matter. Once again we are hard pressed to find an abuse of the court's discretion. Antupit had already testified as to his inability to recall the telephone calls. We fail to discern how further inquiry could have revealed anything relevant to the claim of unfair trade practices.

The plaintiff's second and third grounds for attacking the court's treatment of his CUTPA claim involve certain alleged representations made by the defendant after the sale of the vehicle to the plaintiff. The plain-

nonconforming or conforming; and if so, if he found them to be nonconforming, his obligation is to return the purchase price.

"I want to see what steps he took to find out if that was so.

"Mr. Brand: Am I reading a different statute, Judge. Do I not have it all here perhaps?

"The Court: 'The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.'

"Now, based upon what I have just read, I still don't know the pertinence.

"Mr. Parenteau: Now, the second section says the buyer shall give reasonable notice.

"The Court: 'Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.'

"Sustain the objection.

"Mr. Parenteau: May I have an exception, Your Honor.

"The Court: Exception may be noted."

tiff took delivery of the vehicle on July 17, 1984, but had to return it to the defendant for repairs on several occasions, one being on July 26, 1984. At trial, the plaintiff attempted to elicit testimony as to representations made by the defendant on July 26, 1984, that a new rear end had been placed on the vehicle and that the vehicle was safe to drive. The court refused to allow the inquiry on the ground that the plaintiff's complaint did not allege any representations except for those made at the time of sale. The plaintiff argued that the general allegations in his complaint with respect to the "defendant's representations regarding the mechanical state of the vehicle," combined with various factual allegations made earlier in his complaint, were broad enough to encompass *all* representations which occurred. The trial court disagreed. The plaintiff then moved to amend its complaint but the motion was denied.[6]

---

[6] The pertinent portion of the dialogue between the court and the plaintiff's counsel on this issue was as follows:

"Q. Now, on July 26th when they in fact took the axle out and pressed a bearing onto it, at that point they could have discovered whether or not that axle was in a defective condition or not.

"A. Yes.

"The Court: Whether it was in a defective condition on July 26th, not on the day that it was sold.

"Mr. Parenteau: Right.

"The Court: All right, that's — I'm just confining my questions to the day that it was sold because there's an allegation here in your complaint that there were representations made and that there was a defective vehicle sold to your client.

"Mr. Parenteau: And, Your Honor, there were also representations made on July 26th that a new rear end had been put into that vehicle and it was safe to drive.

"The Court: You don't allege that. You don't allege that anywhere.

"Mr. Parenteau: I think, Your Honor, with all due respect —

"The Court: I'm talking now about representations.

"Mr. Parenteau: There were representations made the whole —

"The Court: I'm talking about representations with regard to July 26th. I'm not talking with regard to representations made on July 16th. Where in your writ do you allege that there were misrepresentations made on July 26th?

A plaintiff's right to recover has traditionally been based on the allegations made in his complaint. "A plaintiff may not allege one cause of action and recover upon another." *Malone* v. *Steinberg,* 138 Conn. 718, 721, 89 A.2d 213 (1952). While this principle still remains in force today, courts now follow a more liberal policy in passing on claims of variance between the pleadings and the proof offered. *Francis* v. *Hollauer,* 1 Conn. App. 693, 696, 475 A.2d 326 (1984). A court will overlook a variance between the pleadings and

"Mr. Parenteau: I don't allege a specific date, Your Honor. I say in Count 5, Paragraph 12 that 'defendant's representations regarding the mechanical state of the vehicle.' I submit, Your Honor, that that statement is broad enough to encompass everything that occurred.

"The Court: Count 5?

"Mr. Parenteau: Count 5, Paragraph 12.

"The Court: Well, that doesn't—that doesn't encompass a July 26th representation. All right, you may stand down, sir.

\* \* \*

"Mr. Parenteau: Your Honor, in light of your indications that my complaint is not sufficiently broad to encompass the type of representations that I —

"The Court: It has to do with the unfair trade practices?

"Mr. Parenteau: It does, Your Honor.

"The Court: Is that the only one count that it has to do with?

"Mr. Parenteau: Yes, Your Honor.

"The Court: Are you asking to —

"Mr. Parenteau: Your Honor —

"The Court: What?

"Mr. Parenteau: Your Honor, the last count incorporates by reference all of what's in Count 1. In Count 1, I discuss all of these defects.

"The Court: Count 5 is the only place you claim where you are covering representations. I'm referring now only to representations made with regard to the July 26th repairs. Is that right?

"Mr. Parenteau: Right, including Count 1.

"The Court: And are you moving to amend it?

"Mr. Parenteau: I am moving to amend the complaint to add what I believe would be —

"The Court: Motion is denied.

"Mr. Parenteau: —evidentiary allegations. May I have an exception, Your Honor.

"The Court: You may have an exception."

proof unless that variance is so material as to prejudice the other party in the presentation of its case. Practice Book § 178; *Strimiska* v. *Yates,* 158 Conn. 179, 184, 257 A.2d 814 (1969).

The trial court in the present case did not expressly find that the variance between the pleadings and proof offered by the plaintiff was material. This conclusion is implicit, however, in the court's refusal to allow into evidence the alleged representations made on July 26, 1984. When a material variance exists, the court may allow a party to amend its complaint. Practice Book § 178. "The trial court has wide discretion in granting or denying amendments," and its determination will not be reversed absent an abuse of discretion. *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980). Our jurisdiction generally follows a liberal policy in allowing amendments to complaints. Id. Factors to be considered in determining whether leave to amend should be granted are the length of the delay, the fairness to the opposing party, and the negligence, if any, of the party offering the amendment. *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 302–303, 460 A.2d 488 (1983).

The court here refused to allow the plaintiff to amend its complaint to allege representations made after the sale of the vehicle. From our review of the record, the court's action was not an abuse of its discretion. The trial was nearly completed at the time the variance emerged, and the trial judge could reasonably have believed that allowing the plaintiff to present proof of statements made after the sale of the vehicle would have unreasonably prejudiced the defendant. In short, we find no abuse of discretion. *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* supra, 564; *Lawson* v. *Godfried,* supra.

The plaintiff finally alleges that the court applied an incorrect standard in determining whether a violation

of CUTPA occurred. At the close of the evidence, the court made the following statements: "I don't think that the factual pattern is such where I can find that the behavior of the [defendant] violated the Unfair Trade Practices Act. . . . There's no evidence that [it] knew or should have known that the—that there were defects in this vehicle, no indication that [it] knowingly had sold a vehicle which was defective or should have known it was defective."[7] Although the court's memorandum of decision is silent as to the standard it applied in evaluating the CUTPA claim, the plaintiff argues that the above quoted language indicates that the court required the plaintiff to establish actual or constructive knowledge of the defects on the defendant's part. The plaintiff contends that scienter is *not* required for the establishment of a CUTPA violation, citing *Bailey Employment System, Inc.* v. *Hahn,* 545 F. Sup. 62, 67 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983), and that the court therefore committed reversible error in requiring that the plaintiff show that the defendant knew the vehicle was defective.

It is now well established that CUTPA proscribes a broader range of conduct than did the common law action for innocent misrepresentation. *Sportsmen's Boating Corporation* v. *Hensley,* supra, 756; *Hinchliffe*

---

[7] The court stated: "Well, I'm not—I don't think that the factual pattern is such where I can find that the behavior of the defendants violated the Unfair Trade Practices Act. I don't think they — I feel that they did what they had to do.

"There's no evidence that they know or should have known that the — that there were defects in this vehicle, no indication that they knowingly had sold a vehicle which was defective or should have known that it was defective. There seems to me to have been an at-arms'-length transaction where it is a used vehicle four or five years old, and I don't think anybody in his right mind buys a vehicle that's used expecting it to be perfect. I don't think I would. I don't know about other people. I personally don't feel that every new car is perfect, but — from what I read in the paper where these — General Motors and Ford are calling — and Chrysler are calling back cars to have them fixed."

v. *American Motors Corporation,* 184 Conn. 607, 617, 440 A.2d 810 (1981). In *Hinchliffe* v. *American Motors Corporation,* supra, 616, we explained that the common law action for innocent misrepresentation came to be known as an action sounding in warranty. In cases involving goods, we noted, common law warranty actions have been displaced by provisions of the Uniform Commercial Code. See *Johnson* v. *Healy,* 176 Conn. 97, 100–101, 405 A.2d 54 (1978). Under the common law action, and under several of the warranty provisions of the code, however, a plaintiff still must prove reliance and that the representation became part of the basis of the bargain. See General Statutes §§ 42a-2-313, 42a-2-315; *Johnson* v. *Healy,* supra, 101. In *Hinchliffe* v. *American Motors Corporation,* supra, 617, we held that under CUTPA it was not necessary for a plaintiff to prove reliance or that representation became part of the basis of the bargain.

If a representation was not made innocently, the common law allowed a plaintiff to sue for fraud, deceit or "ordinary" misrepresentation. Under our common law, a person claiming to be a victim of fraud or misrepresentation had to prove "that a false representation was made as a statement of fact; that it was untrue and was known to be untrue by the party making it; that it was made to induce the other party to act on it; and that he did so to his injury." *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 515, 271 A.2d 69 (1970). Because *Hinchliffe* compared an action under CUTPA to an action for *innocent* misrepresentation, it did not expressly discuss whether it was necessary under CUTPA to prove knowledge of the falsity or an intention to deceive. *Johnson* v. *Healy,* supra, 100–103.

In deciding whether a particular practice is unfair or deceptive under our statutes the legislature has indicated that "the courts of this state shall be guided by interpretations given by the Federal Trade Commis-

sion and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)) . . . ." General Statutes § 42-110b (b). The United States District Court for the District of Connecticut has determined that for a representation to be unlawfully deceptive, it is not necessary that the seller intended to deceive. *Bailey Employment System, Inc.* v. *Hahn,* supra, 67; see also *Porter & Dietsch, Inc.* v. *F.T.C.,* 605 F.2d 294, 308–309 (7th Cir. 1979). In keeping with the remedial purpose of the federal Unfair Trade Practices Act, other courts and commentators have interpreted the act not to require proof that the actor or declarant knew of the falsity of his statement or act. See generally D. Ormstedt & R. Langer, "The Connecticut Unfair Trade Practices Act," 52 Conn. B.J. 116, 124 (1978), and authorities cited therein. Finally, we note that in *Sportsmen's Boating Corporation* v. *Hensley,* supra, 755, we explained that the difference between a tort claim of interference with business expectations and a claim under CUTPA is that under the former, the plaintiff must prove a *malicious* or *deliberate* interference with a competitor's business expectancy while under the latter it need only be shown that the defendant engaged in unfair competition or in an unfair or deceptive act. On the basis of these prior holdings, we conclude that knowledge of falsity, either constructive or actual, need not be proven to establish a violation of CUTPA.

The defendant argues that the trial court here did *not* require that the plaintiff demonstrate knowledge on the defendant's part. Instead, the defendant claims that the statements concerning knowledge were made by the court during a general discussion with the parties in which the court noted its uncertainties as to the law in this area. We are unable to determine whether, in evaluating the CUTPA claim, the court applied the warranty standards of the code, the common law stan-

dard of misrepresentation or the broad CUTPA standard. The memorandum of decision, as we noted above, disposes of the CUTPA claim summarily by stating merely that the plaintiff had not presented sufficient evidence to establish a violation of CUTPA. We are also unable to determine the factual basis on which the court concluded that no CUTPA violation was presented. Thus, even if the court did apply the correct standard, we are unable to evaluate whether its application of the standard to the facts of the present case was clearly erroneous. We therefore must remand this case to the trial court for further articulation of (1) the legal standard it employed in determining that the plaintiff had not established a violation of CUTPA, and (2) the factual grounds upon which it relied to reach its conclusion. See Practice Book § 4061 (formerly § 3060D); *State* v. *Lafferty,* 189 Conn. 360, 363, 456 A.2d 272 (1983).

The case is remanded to the trial court with direction to file a memorandum of decision articulating the legal and factual basis upon which it found that the plaintiff had not established a violation of CUTPA.

In this opinion the other justices concurred.

