274

Jack L. MAY, et ux *v.* J.T.L., Inc.

86-283                                    729 S.W.2d 417

Supreme Court of Arkansas
Opinion delivered May 26, 1987

*Phil Stratton and Casey Jones, Ltd.*, by: *Phil Stratton*, for appellants.

*Peel, Eddy & Gibbons*, for appellee.

DAVID NEWBERN, Justice. The appellee sold the appellants two tractors and a front end loader on a financing contract. The appellants did not meet their obligation, as provided in the contract, to pay for the equipment. The appellant notified the appellee they were revoking their acceptance of the items. Then the appellee replevied the items and sued the appellants for the deficiency between the price for which the appellee resold them and the price stated in the contract. The appellants counterclaimed, asserting they had properly revoked their acceptance and were entitled to recover the money they had paid the appellee under the contract. The trial court granted a directed verdict in favor of the appellee as to the appellants' counterclaim, and a jury found in favor of the appellee in the amount of the alleged deficiency.

The questions presented in this appeal are whether the directed verdict was proper, *i.e.*, whether the appellants had grounds to revoke their acceptance of the items, and whether the court properly allowed introduction of a lease agreement between the parties. We hold that it was error to direct a verdict against the counterclaim.

The appellee introduced the lease agreement, which apparently preceded and merged with the contract in question here, for the purpose of showing the duration of the contractual warranty on the equipment. The appellants objected to its introduction into evidence on the basis of the parol evidence rule. While we would not have reversed the decision on the basis of the erroneous admission of the lease as irrelevant, we note that in the event of a retrial of the case it should not be admitted unless some issue with respect to the warranty period develops.

On October 5, 1984, the appellants purchased from the predecessor of the appellee a 1983 Case model 1940 tractor, a 1983 Case model 1190 tractor, and a 1983 Case front end loader. The purchase price for all three items was $40,000. The appellants traded in equipment for which they were given credit of $14,000 against the purchase price, and they paid $3,000 cash. The balance due was to be paid in three equal, annual, installments of $10,250.54, but the first payment was not to be due until November 1, 1985. The appellant experienced difficulty with the

larger of the two new tractors. The testimony was that it would only operate for two hours before overheating. Appellant Jack May testified that he frequently called the appellee about the problem and was advised to flush the tractor's radiator and "blow it out." He did so on numerous occasions, but it did not cure the problem. He testified that he also had trouble with the air conditioner on that tractor and that it had not been successfully repaired.

In August of 1985, Jack May was complaining to his brother-in-law about the problem with the new Case tractors, and the brother-in-law told him they were not Case tractors. He protested that they were, and when the two men went out to look, the wiring harness was pulled back on one of the machines, and there, stamped on the engine, was the name "David Brown." The appellants formally revoked their acceptance of all the equipment in September, 1985. The appellee repossessed it, sold it, and then brought this action for the deficiency between the price it received upon the resale and the contract price of $18,739.02. The appellants counterclaimed for the $17,000 they had invested in the equipment, asserting that they had the right to revoke their acceptance of the equipment because it did not conform to the equipment they had the right to receive under the contract.

The testimony showed that David Brown was a company which manufactured tractors in Meltham, England, up until 1972 when the David Brown Company was purchased by the Case company. Since that time Case tractors of less than one hundred horsepower have been manufactured at that particular plant and exported to the United States. At first they were sold with decals showing both the Case and David Brown names, but for years have had exterior markings, at least, only as Case tractors. Jack May testified that David Brown tractors have a reputation which is inferior to that of Case tractors, and he did not know he was buying any David Brown equipment.

In granting the appellee's motion for directed verdict as to the appellants' counterclaim, the court and the appellants' counsel engaged in the following colloquy:

The Court: What should it have conformed with?

Mr. Stratton [appellants' counsel]: Should have conformed to the Case product.

The Court: And the Case product is exactly what your man got, but he happens to have an engine block with the name David Brown stamped on it, which they have explained.

Mr. Stratton: Mr. Dorsey testified that the entire tractor was made in England and shipped here.

The Court: That's my understanding. Rolls Royces and Jaguars are made in England.

Mr. Stratton: I understand that. When you buy a Rolls Royce you know what you're getting. You're not getting a Volkswagen.

Mr. Peel [appellee's counsel]: This is the correct jury instruction that this is what they had to prove and they did not.

Mr. Stratton: I'd like to see your jury instruction.

The Court: Phil, there isn't any question of fraud in this thing.

Mr. Stratton: Deception, your Honor, putting one label on another; that's a jury question.

The Court: No, I don't think there is. Now if David Brown were still in business — or whatever the name is — and were still producing tractors, something like that, you might have a better argument. But if they haven't produced since '72, they can't be misleading anybody. What would you be misleading them for or about, that they were getting a better deal than what they thought? They can't be getting any better deal because there ain't anything else out under the name of David Brown.

■ As to this aspect of the case, our holding is that the trial court got it exactly right. This is not like the cases in which General Motors put engines bearing one brand name in cars bearing another. *See In re General Motors Corporation Engine Interchange Litigation, Oswald* v. *General Motors Corporation,* 594 F.2d 1106 (7th Cir. 1979). Here, there is no longer a David Brown product. The Case organization has taken over the David Brown plant in England and is producing its smaller engine tractors there. The fact that the David Brown name is stamped on the engine of a tractor otherwise marked as a Case tractor does

not make it a product which does not conform to the contract any more than if it were made in the former David Brown plant and had the name "Case" stamped on the engine.

The problem, however, is, as the appellants contend, that in granting the directed verdict the court ignored the evidence about the fact that the larger tractor had been unsatisfactory from the inception of the purchase. Article 2 of the Uniform Commercial Code, particularly the part codified as Ark. Stat. Ann. § 85-2-608 (Add. 1961) permits a buyer to revoke his acceptance of a "lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it."

Whether goods are nonconforming and a revocation of acceptance was given within a reasonable time are questions of fact. *Frontier Mobile Home Sales* v. *Trigleth*, 256 Ark. 101, 505 S.W.2d 516 (1974); *Dopieralla* v. *Ark. La. Gas Co.*, 255 Ark. 150, 499 S.W.2d 610 (1973); *O'Neal Ford, Inc.* v. *Early*, 13 Ark. App. 189, 681 S.W.2d 414 (1985). In this case there was sufficient evidence of nonconformity to go to the jury, thus it was error to direct the verdict against the appellant's counterclaim. We must also reverse the verdict in favor of the appellee, for if it is ultimately determined that the appellants' counterclaim is to prevail, the appellee would not be entitled to recover on the contract.

Reversed and remanded.