[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. CT Page 6116
INTRODUCTION
The plaintiff landlord filed the present action for unpaid rent and property damage in connection with the defendants' rental of the first floor 29 Makera Street, Pequabuck, Connecticut. The defendants took occupancy under a five-year lease on or about June 1, 1988 and vacated, after receiving a notice to quit in December 1988, on February 22, 1989.
The defendants filed four special defenses as well as a counterclaim. The first special defense concerned lack of a smoke detector; the second, failure to keep the premises in habitable condition; the third, unlawful entry; and the fourth, breach of the defendants' covenant of quiet enjoyment. The counterclaim included a damage request for the quiet enjoyment claim and more importantly, for unlawfully discriminating against the tenants based on their religious practices.
 II.
DISCUSSION
 A.
1.
The court believes that the plaintiff has proved that the tenants did not pay rent for December and did not pay use and occupancy for February. As the notice to quit issued on December 23, 1988, no rent is awarded for January as no rent was due. Rivera v. Santiago, 4 Conn. App. 608, 610 (1985). Use and occupancy was only claimed for February. A plaintiff's right to recover is based on the allegations in his complaint. See Web Press Services Corporation v. New London Motors, Inc.,203 Conn. 342, 359 (1987).
2.
The court heard testimony as to the alleged damages. Based upon the evidence, the court will award only certain damages and not all those claimed in the February 23, 1989 list. Those damages awarded are:
 1) Lock replacement $ 70.40 2) Ceiling molding repair 100.00 3) Refinishing 75.00 4) Cleaning in Cellar 30.00 5) Sconces 100.00 CT Page 6117 6) Misc. electrical 15.00 7) Refinishing Bath 435.00 ------- $825.40
 B.
The court does not believe that the defendants have met their burden of proof with their special defenses. As to the smoke detector, the court does not believe that the defendants have proved, especially in light of the testimony of the former tenant, William Smith, that the unit had no smoke detector. The only evidence introduced pertaining to the second special defense concerned the accumulation of garbage. The parties each had a different position as to who was to remove the garbage. While the lease was silent on this issue (other than the provision that the tenant not allow the garbage to accumulate), General Statutes 47a-7(a)(5) requires the landlord to both provide receptacles and arrange for their removal. The court believes that the parties' uncertainty as to the removal was the precursor that led to the breakdown in this relationship. Certainly during July 1988 there was much conflict over this issue.
The court notes that other than the July incidents, no other testimony was introduced on the disposal of garbage.
The third special defense concerns the entry by the landlord's son-in-law into the basement after a problem with the furnace. Mrs. Richezza apparently found Mr. Masterson and two other men looking at the furnace. Mr. Masterson should have contacted Mrs. Richezza as required by General Statutes47a-16. Yet, the court does not believe it rises to the level of tenant harassment. Since the defendant had been required to contact the fire department the previous day as a result of problems with the furnace, this court cannot find that Mr. Masterson's prompt inspection/repair was done in bad faith.
The fourth special defense concerned a breach of the covenant of quiet enjoyment. There is no question that complaints were made to the police and that there were certain discussions concerning the parking. The sword, however, is two edged. This court heard testimony that the police were called by both sides. As previously-indicated, perhaps starting with the trash removal issue, the relationship became hostile and neither side is without fault.
 C.
The final issue is the defendants' counterclaim CT Page 6118 concerning religious discrimination. Such discrimination, if proved, would constitute a violation of the Fair Housing Act,42 U.S.C. § 3601 et seq. The court does not believe that such a case has been made. There is no question that the parties relationship was less than amicable. As mentioned, however, it originated from contractual obligations that were not clearly spelled out, communication problems, and lack of common courtesy by both parties. It is true that the landlord changed the parking rules — but that did not prevent the defendants from hosting guests in their home for social or religious purposes. There was no evidence introduced that visitors could not park on the street.
This court is mindful of the decision rendered by the United States Department of Housing and Urban Development in dismissing the defendants' complaint for alleged religious discrimination. The Regional Counsel found "there is no evidence to credit complainants' claim of religious discrimination. Rather than a case of discrimination, this appears to be a case where a landlord/tenant relationship deteriorated. . . ." As mentioned, this court agrees with that conclusion, although perhaps not with all of the Regional Counsel's reasons. Accordingly, this court enters judgment for the plaintiff on the counterclaim.
 III.
Conclusion
Judgment shall enter for plaintiff on her complaint and on defendants' counterclaim as follows:
 A) Rent; Use and Occupancy: $1040.00 B) Damages: 825.40 C) Summary Process fees and costs: a) Attorney's Fees 200.00 b) Costs 127.60 ------- Subtotal 2193.00 D) Deduct security deposit 600.00 ------- 1593.00 E) Attorney's Fees, this action 194.61 ------- Total due plaintiff 1787.61
Berger, J.