[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Thomas J. Weglarz, brought this action against the defendant, Plaza Ford, Inc., alleging a violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes 42-110a through 42-110q, "CUTPA", in connection with the sale and subsequent repairs to a new automobile. After a trial of this action the court finds the following facts.
In November of 1992 the plaintiff purchased a new Ford Mustang automobile from the defendant, an East Lyme automobile dealer. In July of 1993 the plaintiff and his son, for whom he had purchased the automobile, noticed that the paint on the right rear quarter panel was fading. The plaintiff brought the car back to the defendant and spoke with the defendant's service manager Dick CT Page 9753 Brown. Brown acknowledged that the paint in the area in question was fading. He agreed that the defendant would repair the car for no charge under the automobile warranty from the manufacturer.
The defendant repaired the area in question, which involved matching the factory paint exactly and repainting an area larger than the rear quarter panel, referred to as "blending", so that the finish on the repaired area and that on the rest of the car would blend together. Brown was very pleased with the repair because he believed that an excellent paint match had been effected. However, the plaintiff was not happy with the repair. He complained that the paint finish on the right rear quarter panel was not perfect, one line of paint had dripped onto the rear taillight, there were paint drips on the rear bumper and the molding around the right rear door was unsatisfactory because it had been buffed to a shiny finish, rather than the factory matte finish. The plaintiff. claimed that the foregoing defects were perceptible from a distance of fifteen feet. However, they were imperceptible in the numerous photographs that the plaintiff introduced into evidence.
The plaintiff complained about the defendant's repair work. Although Brown thought that the alleged defects were either extremely minor or nonexistent, he agreed that the defendant would again attempt to repair the affected area and remedy the alleged defects. William Sharpe, who was in charge of the defendant's body shop, was instructed to do "whatever needed to be done to the car so that it would go out and not come back." In making the repairs the defendant spent substantially more time than that for which it was reimbursed by the manufacturer. The defendant again refinished the affected area and had even replaced the right rear window in order to rectify the window molding problem.
Unfortunately, the plaintiff was no more satisfied with the second repair attempt than he was with the first. He complained that the defendant had caused more damage, such as spattering the cargo area with compound residue. The "spattering" consisted of four tiny spots of compound which appeared to be removable with the appropriate cleaning solution. The claimed defects were again barely perceptible in photographs introduced by the plaintiff. The plaintiff did not have any further work done to repair the defects of which he now complains. Those defects did not negatively affect the value of the car.
After the defendant had repaired the paint problem twice, Brown concluded that there was nothing more that the defendant CT Page 9754 could do and that no amount of repair could ever satisfy the, plaintiff. The defendant did not respond to letters which the plaintiff wrote to Brown and to the officers of the defendant. This lawsuit followed.
Although the complaint alleges that the defendant sold the vehicle as new, when it was really damaged, there was no evidence that the vehicle was anything other than a new car when it was sold to the plaintiff. There was also no evidence that the fading paint on the rear quarter panel had been caused by the repair of prior damage. Brown speculated that the vehicle may have been damaged and repaired at the Ford factory. However, there was no evidence that such damage and repair had occurred. Sharpe said that the rear quarter panel appeared to have been covered with a lacquer, type of paint which neither the defendant nor the manufacturer had used for many years.
The defendant had purchased the automobile from another dealer. Such purchases between dealers are common in the industry. The defendant had no knowledge of any preexisting damage or repair when it sold the car to the plaintiff. The defendant promptly responded to the plaintiff's complaints and made good faith efforts to repair the paint defect and other minor defects of which the plaintiff complained.
The plaintiff claims, essentially, that the sale of a new car which developed a paint defect of unspecified origin and the failure to satisfactorily repair the defect constitute unfair and deceptive practices under CUTPA. The plaintiff has chosen to proceed only under CUTPA, rather than under a breach of warranty theory.
In Jacobs v. Healey Ford-Subaru Inc., 231 Conn. 707, ___ A.2d ___ (1995), the Connecticut Supreme Court recently reviewed the parameters of unfair and deceptive practices within the meaning of CUTPA:
 We recently had occasion to discuss the well established test for determining whether a particular act or practice violates CUTPA. "It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, CT Page 9755 offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. Conaway v. Prestia, [191 Conn. 484, 492-93, 464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244-45 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) . . . .McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567-68, 473 A.2d 1185 (1984).
 "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59,614, [and] 59,635 (1978). . . . Id., 569 n. 15. Thus a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., Sprayfoam, Inc. v. Durant's Rental Centers Inc., 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy. See, e.g., Sportmen's Boating Corporation v. Hensley, [192 Conn. 747, 474 A.2d 780
(1984)]. Web Press Services Corporation v. New London Motors Inc., [203 Conn. 342, 355, 525 A.2d 57 (1987)]. Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. See id., 363 (knowledge of falsity, either constructive or actual, need not be proven to establish CUTPA violation). Cheshire Mortgage Service, Inc. v. Montes, [223 Conn. 80, 105-106, 612 A.2d 1130 (1992)]." (Internal quotation marks omitted.) Normand Josef Enterprises, Inc. v. Connecticut National Bank, 230 Conn. 486, 522-23, 646 A.2d 1289 (1994).
231 Conn. at 725-726.
In Normand Josef Enterprises v. Connecticut National Bank,230 Conn. 486, ___ A.2D ___ (1994) the plaintiff served the defendant bank with two executions in an attempt to reach the bank account of one of the bank's customers. After receiving each execution the bank set off against the customer's account and then notified the CT Page 9756 plaintiff that there were no funds in the account available to satisfy the execution. The trial court found that such notification was a deceptive practice which violated CUTPA. The Supreme Court disagreed and held that absent a duty to disclose the set off to the plaintiff, the failure to disclose did not violate CUTPA. The Court also noted the bank had not intentionally or fraudulently created a false impression and stated:
 The bank's notices, in substance, were not immoral, unethical, oppressive or unscrupulous. The bank's technical violation of 52-367a and the lack of explanation in its concomitant notice did not offend public policy, implicate the concept of unfairness or cause the type of substantial injury that CUTPA was designed to address. Cheshire Mortgage Service, Inc. v. Montes, supra, 223 Conn. 105-106; see Hinchliffe v. American Motors Corp., supra, 184 Conn. 617 n. 7. We conclude, therefore, that the trial court improperly determined that the bank's actions violated CUTPA.
230 Conn. at 524-525.
In Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707, ___ A.2d ___ (1995), the trial court found that the defendant had violated certain provisions of the Retail Installment Sales Financing Act and the Uniform Commercial Code in connection with notices sent to the plaintiff after repossession of an automobile. However, its declined to find that those violations also constituted violations of CUTPA. The Supreme Court agreed and stated, "The question of whether an action or practice can be the basis of a CUTPA action depends upon all the circumstances of the particular case. AtlanticRichfield Co. v. Canaan Oil Co., 202 Conn. 234, 242, 520 A.2d 1008
(1987)." 231 Conn. at 726. The trial referee found that the incorrect notices were caused by the defendant's lost records and files and sloppy accounting methods, but that "there was no fraud, deliberate deception or willful misconduct on its part."231 Conn. at 728.
From the foregoing cases it appears that although no intent to deceive is necessary in order to find a deceptive practice under, CUTPA, the lack of such an intent has been sufficient to warrant a finding of the lack of a violation of CUTPA. In this case, the plaintiff has pointed to no duty on the part of the defendant to disclose any possible preexisting damage of which it had no knowledge. CT Page 9757
The defendant may have violated some warranty given to the plaintiff by it or the manufacturer. Such a violation could be a per se violation of CUTPA under Connecticut General Statutes §42-184. However, the plaintiff has not alleged or established any such violation. Under the circumstances of this case the defendant's repairs to the vehicle did not constitute unfair or deceptive practices even though the vehicle was not precisely "like new" after the final repair. The defendant acted in good faith and not in a manner which was immoral, unethical, oppressive or unscrupulous.
For the foregoing reasons, judgment may enter in favor of the defendant.
By the Court
Aurigemma, J.
Judgment enter in accordance with Foregoing Memorandum of Decision.
Jonathan W. Field, Deputy Chief Clerk