[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in this action are Erving Thomas Arnold CT Page 1983 (hereinafter referred to as Arnold) and Glenn Banks (hereinafter referred to as Banks). The defendants are R R Transportation Services, Inc., a Connecticut Corporation (hereinafter referred to as R R) and Russell D'Agostino (hereinafter referred to as D'Agostino) and Russell Vito (hereinafter referred to as Vito). This matter was commenced by a complaint dated December 18, 1987, which was revised on August 30, 1988. The revised complaint is in four counts namely, to wind up R R under Connecticut General Statutes 33-382 and 33-383, asking for an accounting of corporate assets, Breach of Fiduciary Duty and violations of Connecticut General Statutes 33-316, 33-326, 33-327 and 33-331, and the fourth count alleges a Breach of an Incorporators Agreement. On September 14, 1988 the defendants D'Agostino, Vito and R R filed a cross complaint against American Distribution Services, Inc., a Connecticut Corporation, (hereinafter referred to as ADS) in three counts; namely, a claim under Connecticut Unfair Trade Practices Act, Breach of Contract and Fraud. On October 6, 1988, the defendants filed their answer to the plaintiffs' complaint and a five count counterclaim against the plaintiffs. On January 3, 1989, the defendants filed eight special defenses to the plaintiffs' Revised Complaint. On January 24, 1989, ADS filed an answer to the defendants' cross complaint and the plaintiffs filed a reply to the defendants' Special Defenses. Then on January 17, 1992, the plaintiffs filed an answer to the defendants' counterclaim.
All of the individual parties were in the ground transportation business for many years prior to 1985 and were friendly with or knew of each other during those years. Mr. D'Agostino was associated with common carriers between 1970 and 1982. In 1983 he became involved with the Air Freight Transportation business and worked with Mr. Vito in that business. Both defendants discussed forming their own air freight company since approximately 1983. However, for one reason or another they did not form such a company until they formed R R on December 26, 1985. The plaintiffs each owned a fifty (50%) per cent interest in ADS until 1989 when Banks purchased Arnold's interest in that corporation. There is no dispute that R R was incorporated on December 26, 1985 with Vito as President/Secretary, D'Agostino as Executive Vice President/Treasurer and Banks and Arnold each as Vice President. All four individuals were also Directors of R R. (Exhibit B) R R was incorporated by the plaintiffs' attorney who testified that he only charged for his expenses and did not charge a legal fee for forming the corporation. The plaintiffs claim this was CT Page 1984 part of their contribution for stock in R R. The plaintiffs testified that they each owned one-sixth (1/6) of the issued shares of stock of R R and that each defendant owned one-third (1/3) of said shares in said corporation. The plaintiffs claim that their contribution to R R was as follows: credit rating, customer contacts of the plaintiffs, accounting procedures, computer system of ADS if R R could use, which it could not, $10,000.00 loan for start up monies, guarantee of payroll, medical benefits and expenses including a car for six months. Mr. Arnold testified that the air freight business was more profitable than the ground freight business. He further testified that since the defendants were going to actually run the business they should receive one-third (1/3) of the stock in salary and one-third (1/3) for profit and the plaintiffs each divide equally the remaining one-third (1/3) of the corporate stock for their contribution.
The defendants claim that the only agreement they had with the plaintiffs was that they would loan the defendants $10,000.00 which the defendants would personally guarantee, the plaintiffs would receive a thirty-three (33%) percent commission on all air freight business they sent to R R and they (plaintiffs) would receive an option to purchase stock in R R.
On December 10, 1985, Banks gave a $1,500.00 check to D'Agostino and again on January 2, 1986, a check for $8,500.00 to R R (Exhibit D) to be used to cover the start up expenses of R R. Of this sum, each plaintiff contributed $5,000.00 according to their testimony. This sum was subsequently paid back to the plaintiffs by the defendants. Then on January 7, 1986, R R took delivery to a 1985 GMC truck which financing was arranged by Arnold. Also at this time ADS provided an Oldsmobile Cutlass automobile to R R which R R subsequently paid for according to the testimony. This vehicle was subsequently returned to the company that leased it to ADS by R R when R R purchased two vehicles from that same company.
In December 1985 the parties met with William Lennon, an insurance salesman, on various occasions. He ultimately sold four policies of insurance to the parties totally $500,000.00. These policies insured the plaintiffs' lives for $83,000.00 each and the defendants' lives for $167,000.00 each. (Exhibits P, Q, and EE). The policies insuring the plaintiffs were never issued according to Mr. Lennon due to an error on his part. However, the policies insuring the defendants were issued and in effect until they were canceled on September 2, 1987. (Exhibit 21) These policies were issued to fund a Buy-Sell Agreement between the parties according to Mr. Lennon and the plaintiffs. However, no such agreement was ever drawn up or signed. Mr. Lennon testified he verified the ownership interest in R R with the defendants and listed it on Exhibit Q. That exhibit listed the plaintiffs as each owning CT Page 1985 thirty-three (33%) of the stock in R R and the plaintiffs as each owning sixteen and one-half (16.5%) of such stock. The defendants testified that the reason said insurance policies were taken out by R R was to guarantee payment on the aforementioned $10,000.00 loan.
R R had discussed entering into an Air Freight Contract with various companies for the shipment of freight. It finally determined that it would sign a Sales Agency Agreement with Target Airfreight, Inc. (Exhibit BB) which it did on January 3, 1986. Target Airfreight, Inc. billed all of R R's customers and then remitted weekly checks to R R.
In June 1986, the parties held a meeting whereby it was agreed that the plaintiffs' salaries would be increased to $500.00 each per week and that the plaintiffs would receive a salary of $250.00 each per week. Also as a result of that meeting, the plaintiffs each received a bonus of $1,000.00 and the defendants each $2,000.00. The defendants testified that between January and June 1986, the plaintiffs referred business to R R on which approximately $6,200.00 in profit was made. They allege the $2,000.00 the plaintiffs received was only a commission of thirty-three (33%) percent on the $6,200.00 as per their agreement. After eighteen weeks R R stopped paying the plaintiffs the weekly sum of $250.00. The defendants testified that they heard the plaintiffs were referring Air Freight Business to another company and that that is why they stopped the weekly payments to the plaintiffs. Then on November 5, 1986, the plaintiffs were sent stock certificates for one and one-sixth (1 1/6) shares of stock in R R and along with the stock certificate was a request for payment of $166.65 for said certificate (Exhibit 4). However, the stock ledger of R R (Exhibit F) shows that the shares were not issued until November 7, 1986. On December 9, 1986, R R held a stockholders' meeting and elected new directors. Those elected were the defendants and their wives. The plaintiffs were as of that date no longer directors or officers of R R (Exhibits 9 and 12). Then on October 13, 1987, the Board of Directors of R R declared the offer to purchase shares in that corporation previously offered to the plaintiffs was withdrawn (Exhibits 10 and 11). The plaintiffs have admitted that after November 1, 1986, they have not referred any air freight business to R R.
The first issue in this matter is to determine whether the plaintiffs are in fact stockholders in R R. After hearing the evidence this court finds that the plaintiffs Erving Thomas Arnold and Glenn Banks have proven by a fair preponderance of the evidence that each own a one-sixth (1/6) interest in and to the shares of stock of the defendant R R Transportation Services, Inc. and have so owned those shares since the formation of that corporation on December 26, 1985. If the plaintiffs were not CT Page 1986 shareholders, why would the parties purchase such a large amount of life insurance and list the plaintiffs as one-sixth (1/6) owners of R R on said application, why would the Internal Revenue Tax Returns list the defendants as each owning only 33% of the corporation (Exhibits L, M, N, O and U), why would the plaintiffs receive a salary equally to fifty (50%) percent of the salary the defendants received between June and October 1986 and finally why was the bonus issued by R R in June 1986 one-third (1/3) to the plaintiffs and two-thirds (2/3) to the defendants? There was testimony from the defendants and their accountant that R R did extremely well financially in their first year of operation for a new company. That being so why would the defendants offer a one-sixth (1/6) interest in R R to the plaintiffs for $166.65 (Exhibit 4) unless the plaintiffs were entitled to such a one-sixth interest?
The next issue for the court is to determine what damages, if any, the parties are entitled to on the complaint, counterclaim and cross complaint.
There was a great deal of testimony concerning the manner in which the defendants operated R R especially concerning travel and entertainment expenses and about the large number of corporate checks that were made payable to cash. All of the parties are experienced businessmen wise in the ways of the business world. The plaintiffs had a public accountant testify and the defendants had a Certified Public accountant do likewise. These individuals and the parties testified at length and in great detail about these expenses. There was testimony by the defendant R R's accountant that for the years 1987, 1988, 1989 and 1990 the Travel and Entertainment expenses were $15,882.00, $13,622.00, $9,560.00 and $11,113.00 respectively. This is in addition to travel expenses which were listed on the aforementioned tax returns. The defendants testified that gratuities were a major expense of the freight business and that it was common practice to entertain traffic managers and other employees of customers for dinner, with sport tickets, gifts and loans. They also testified that each week they were each given $225.00 by R R for such purposes and many weeks more than that amount was required to pay for this business expense. There was no question in the court's opinion that the amount of checks made to cash by R R and given to the defendants seemed unusual. However, the plaintiffs did not prove by a fair preponderance of the evidence that the defendants were not using the funds from such checks for business purposes.
On December 30, 1986, the defendants purchased a condominium in Clinton, Connecticut for $124,900.00 and for which they obtained a mortgage of $112,000.00 (Exhibits R and S). Again on February 2, 1988, they purchased another condominium in Vernon, Connecticut for $78,900.00 and for which they obtained a mortgage CT Page 1987 of $74,955.00 (Exhibits V and W). The defendants testified that whatever income they derived from these properties they deposited into R R's account and then R R paid all the expenses attributed to the condominiums. These amounts are represented by Officer loans as set forth on Exhibit X. It should be noted here that there is only one promissory note evidencing said officer's loans. That is Exhibit 6 dated December 30, 1986 for $16,941.29. Also none of these loans were approved by the Board of Directors of R R. These loans which remain outstanding on the books of R R total $98,478.00 (Exhibit X).
It should also be noted that R R has paid the defendants the sum of $43,604.30 between December 31, 1987 and February 6, 1992 for legal fees and expenses in representing all of the defendants in this matter. (See Exhibit X wherein said expenses are listed as $38,620.00. This figure was updated by the defendants when they filed their closing brief).
As stated hereinbefore, the defendants have filed a counterclaim and cross complaint and seek money damages from the plaintiffs and ADS.
Calvin Tripp, the traffic manager of Northeast Graphics and a customer of R R testified that during the winter of 1991, the plaintiff Banks went to his place of business and asked to speak to him. He stated Mr. Banks then showed him a ledger listing R R as having given gratuities to him. Mr. Tripp further stated that Banks told him that if he (Tripp) did not want such knowledge made public he should give him (Banks and ADS) a few ground shipments each week. Prior to this time R R gave Northeast Graphics a thirteen inch television set each year to be given as an award at Northeast Graphic's Employee Golf Tournament. Mr. Tripp testified he took this as an idle threat, did not give Banks or ADS any ground freight business and did not tell anyone else about this conversation with Mr. Banks.
Both parties's accountants testified as to the value of R R. The plaintiffs' accountant, Joseph Fazzalero, stated that in his opinion the value of R R on December 31, 1986 was $600,000.00 and that that value had decreased to $467,000.00 on December 31, 1990. The plaintiffs' accountant, Matthew Gigletti, values R R at $50,000.00 contingent on the customer base remaining.
The defendants are claiming as part of their damages on the counterclaim that they should be reimbursed for all air freight business of ADS for the period 1986 to this date. Mr. Banks testified that for the period 1987 to 1991 ADS did approximately $61,000.00 to $67,000.00 of air freight business. The defendants claim that sum less thirty-three (33%) percent commission they would have paid the plaintiffs for that business under their CT Page 1988 agreement.
After hearing the evidence the court finds that the plaintiffs have sustained their burden of proof on the second and fourth counts of the revised complaint against the defendants Russell D'Agostino and Russell Vito. The court does not find that the plaintiffs sustained their burden of proof on the first, or third counts in said complaint. The court finds that the salaries, bonus and pension plan and/or profit sharing plan paid by R R to or on behalf of the defendants were reasonable. However, the court finds that the plaintiffs are each entitled to one-sixth (1/6) of the officer loans totally $98,478.00 and the legal fees paid relative to this matter of $43,604.30. These items total $142,082.30. Of this sum which is owed to or was paid for by R R, the plaintiffs are entitled to one-sixth (1/6) share or $23,680.38 each plus interest of $6,474.83 each for a total due Banks and Arnold of $30,155.21 each.
It is further ordered that the defendants shall provide to the plaintiffs a certified Financial Statement of the assets and liabilities of the defendant R R Transportation Services, Inc. within sixty (60) days of the date of this memorandum. Said certified statement shall be prepared by a Certified Public Accountant chosen by the defendants. The cost of such certified statement shall be paid for by R R. Counsel for the defendants at the direction of the court filed a list of corporate assets and accounts payable for R R with the defendants' closing brief. Those documents are attached to this memorandum for information purposes only.
The plaintiffs also seek to have R R Transportation Services, Inc. dissolved under Connecticut General Statutes 33-382b(1). That statute reads as follows:
 (b) Without limiting the generality of its or his authority, the superior court for the judicial district where the principal office of a corporation is located, or any judge thereof, may wind up the business and affairs of such corporation on petition of the following persons in the following cases if in his discretion such remedy is under the circumstances necessary or desirable in the interests of the parties involved or the corporation: (1) In a proceeding by holders of shares having at least one-tenth of the voting power at such time for election of directors when it is established that: (i) The corporation has willfully violated its certificate of incorporation or exceeded its powers; (ii) there has been fraud, collusion or gross CT Page 1989 mismanagement, in the conduct or control of such corporation; (in) the corporation's assets are in danger of waste through attachment, litigation or otherwise; (iv) the corporation has abandoned its business and neglected to wind up its affairs and to distribute its assets within a reasonable time; or (v) any good and sufficient reason exists for the winding up of such corporation.
This court does not find that the plaintiffs have sustained their burden of proof which would enable this court to wind up the affairs of R R under any provision of the aforementioned statute. Further, the court does not find for the defendants on any of their eight revised special defenses as they have not proved by a fair preponderance of the evidence any of said special defenses.
The court does not find that the defendants have sustained their burden of proof on their claims in their cross complaint and, therefore, finds the issues for the plaintiffs Banks, Arnold and ADS on said cross complaint.
As to the counterclaim of the defendants, the court does not find that they sustained their burden of proof on Counts One and Two and, therefore, finds the issues for the plaintiffs on those counts. In Count Three of said counterclaim the defendants have asked for a declaration of the plaintiffs' rights in and to R R Transportation Services, Inc. The court has decided that issue hereinbefore in this memorandum.
In the fourth count of the defendants' counterclaim, they make a claim under Connecticut's Unfair Trade Practices Act (hereinafter referred to as CUTPA).
It is well settled that in determining whether a practice violates CUTPA, the following criteria are to be employed: "`(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen)].' . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice; . . . or a practice amounting to a violation of public policy.
Web Press Services Corporation v. New London Motors, Inc.,203 Conn. 342, 355. A plaintiff who establishes a violation of CUTPA may recover not only actual damages, but in some cases CT Page 1990 attorney fees and punitive damages as well IBID, 354. In this matter the court finds that the defendant R R has proved by a fair preponderance of the evidence a CUTPA claim as to the plaintiff Banks, relative to his actions as to Calvin Tripp and Northeast Graphic as hereinbefore set forth in this memorandum. While there was not actual damage proved, this act by Mr. Banks offends our State's public policy. Thus, the court awards R R the sum of Five Thousand ($5,000.00) Dollars in punitive damages as to the plaintiff Glenn Banks only. The court does not award attorney fees as a result of this violation.
Thus, the court finds that the plaintiffs Erving Thomas Arnold and Glenn Banks are each an owner of one-sixth (1/6) of the shares in R R Transportation Services, Inc. for the reasons stated hereinbefore in this memorandum. The court orders that the defendants Russell D'Agostino and Russell Vito shall pay to each plaintiff the sum of $30,155.21 for which sums each of said defendants shall be jointly and severally liable. Further, the court orders that the plaintiff Glenn T. Banks shall pay the sum of $5,000.00 in punitive damages to R R Transportation Services, Inc. relative to its counterclaim for the reasons hereinbefore stated. Further the court orders that a certified financial statement of the assets and liabilities of R R Transportation Services, Inc. shall be prepared within sixty (60) days of the date hereof by a certified public accountant as hereinbefore set forth, and a certified copy thereof shall be given to each plaintiff.
Judgment may enter accordingly.
WILLIAM J. SULLIVAN, JUDGE