## WEB PRESS SERVICES CORPORATION *v.*
## NEW LONDON MOTORS, INC.
### (12833)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued October 8—decision released December 8, 1987

*Jacques J. Parenteau,* for the appellant (plaintiff).
*Lloyd L. Langhammer,* for the appellee (defendant).

COVELLO, J. The plaintiff, Web Press Services Corporation, sued the defendant, New London Motors, Inc., in a five count complaint for damages arising out

of its purchase of an automobile. The complaint alleged the following: (1) the revocation of the acceptance of commercial goods;[1] (2) breach of an implied warranty of merchantability; (3) breach of an implied warranty of fitness for a particular purpose; (4) breach of express warranties; and (5) unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA).[2] The court, *Edelberg, J.,* found the issues for the defendant on the first, second, third and fifth counts and rendered judgment for the plaintiff to recover $300 on the fourth count. The plaintiff appealed.

In *Web Press Services Corporation* v. *New London Motors, Inc.,* 203 Conn. 342, 525 A.2d 57 (1987), we found no error with respect to the first four counts of the complaint but remanded the matter for an articulation of the factual basis and legal standard employed by the court in rejecting the CUTPA claim. Upon further review of the matter as articulated, we conclude that the trial court correctly found that there was no CUTPA violation and we therefore find no error.

The court found that on July 12, 1984, the plaintiff purchased a used 1980 Ford Bronco from the defendant. The sales price was $7995. It had been driven 37,601 miles. The vehicle was intended for the use of the son of the plaintiff's president for transportation to his summer job and for his pleasure use. The defendant's agent represented that the vehicle was in good condition and stated that it was "excellent," in "mint"

---

[1] "[General Statutes] 42a-2-608. REVOCATION OF ACCEPTANCE IN WHOLE OR IN PART. (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

[2] General Statutes § 42-110a et seq.

condition, and that it was an "unusual" one. The purchase order signed by the plaintiff's treasurer contained a thirty day limited warranty for one half the cost of repairs. It also contained, in bold type, a disclaimer by the defendant of "all warranties, either express or implied, including any implied warranty of merchant ability [sic]."

Prior to its purchase, the plaintiff's agents removed the vehicle from the defendant's premises, had it inspected, and returned it to the defendant with a list of items to be repaired. The defendant's agents completed the requested work without charge.

After the sale, several problems, mostly minor, developed as the vehicle was being used. These included a rear axle malfunction which necessitated the installation of new gears in the rear axle. Again, the defendant's agents completed the repairs without charge. The rear axle subsequently proved defective and on September 20, 1984, it again malfunctioned. The cost of repairing the axle was found to be $600. The plaintiff's president thereupon demanded that the defendant take back the vehicle and refund the purchase price. The defendant refused.

The court also found that the plaintiff wanted a vehicle that the president's son could drive on sand. The son installed four spotlights on the roof of the vehicle so that at night he could have illumination of the beach for a distance of four miles. The court was "of the opinion that the son was less than candid as to the number of times he drove on the beach . . . ." "[T]he court was [further] of the opinion that the plaintiff made some contribution to the mechanical problems of the vehicle."

The plaintiff claims on appeal that the statements made by the defendant's agent coupled with its subsequent failure to return the purchase price constituted

deceptive acts or practices in violation of CUTPA.[3] "For guidance in determining what may constitute unfair or deceptive acts or practices, [the enabling Connecticut legislation] directs us to the 'interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. [§] 45 (a) (1))[4] . . . as from time to time amended.' General Statutes § 42-110b (b)." *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 533, 461 A.2d 1369 (1983).

In *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972), the United States Supreme Court construed the Federal Trade Commission Act. In so doing, it cited three factors adopted by the Federal Trade Commission itself in determining whether a practice, while not deceptive, is nonetheless unfair. These factors were " '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' " Id., 244–45 n.5.

In its articulation, the trial court considered the three factors set forth in *FTC* v. *Sperry & Hutchinson Co.,* supra, and concluded that the defendant's representations did not offend public policy nor were they immoral, unethical, oppressive or unscrupulous (the

---

[3] General Statutes § 42-110b provides in pertinent part: "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[4] 15 U.S.C. § 45 (a) (1) (1976) provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

substance of the first two factors). As predicate findings, the trial court determined that the representations were not significant ones, that favorable comments by sellers with respect to their products are universally accepted and expected in the market place, and that the representations here were mere "puffing." *Web Press Services Corporation* v. *New London Motors, Inc.,* supra, 351–52.

Although these predicate findings are themselves conclusory, they are also factual in character and must be viewed within the context of the totality of circumstances so uniquely available to the trial court. *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). "A factual finding may be rejected by this court only if it is 'clearly erroneous.' Practice Book § 3060D." Id., 392; see *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). A clearly erroneous finding is one "that as a matter of law . . . is ' "unsupported by the record, incorrect, or otherwise mistaken." . . . ' " *Garrison* v. *Garrison,* 190 Conn. 173, 176, 460 A.2d 945 (1983), quoting *Kaplan* v. *Kaplan,* supra.

We have observed previously that the representations made in this case that the vehicle was "excellent," in "mint" condition and that it was an "unusual" one, were oral and nonspecific. *Web Press Services Corporation* v. *New London Motors, Inc.,* supra, 352. Furthermore, the buyer was encouraged and allowed to remove, drive and inspect the vehicle to be purchased. Id. In view of these circumstances, we cannot say that the court's conclusion is " ' "unsupported by the record, incorrect, or otherwise mistaken." . . . ' " *Garrison* v. *Garrison,* supra.

The court next examined the third factor set out in *FTC* v. *Sperry & Hutchinson Co.,* supra, and concluded that there was no "substantial injury to consumers" because the plaintiff *had not relied* on the defendant's

representations. Such a conclusion based on a lack of consumer reliance is in error for "[t]he CUTPA plaintiff *need not prove reliance* or that the representation became part of the basis of the bargain." (Emphasis added.) *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 617, 440 A.2d 810 (1981).

Despite its erroneous factual underpinning, the court's conclusion was nevertheless correct. The "substantial injury" factor is itself subject to a three part test. " 'The independent nature of the consumer injury criterion does not mean that every consumer injury is legally "unfair," however. To justify a finding of unfairness the injury must satisfy three tests. [1] It must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided.' " *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 569–70, 473 A.2d 1185 (1984), citing a letter from the Federal Trade Commission to Senators Wendell H. Ford and John C. Danforth (Dec. 17, 1980), reprinted in N. Averitt, "The Meaning of 'Unfair Acts or Practices' in Section 5 of the Federal Trade Commission Act," 70 Geo. L.J. 225, 291 (1981).

In this case it is clear from the facts as found by the trial court that the plaintiff cannot satisfy the first test of the "substantial injury" factor for the plain reason that the consumer injury here is not substantial. The plaintiff sought the refund of $7995 by reason of a defect that had injured the plaintiff to the extent of $300 or 3.7 percent of the cost of the vehicle. This demand for a refund was made within the context of circumstances wherein the defendant had undertaken all corrections, both before and after the sale, promptly and without charge. The court rendered judgment for the plaintiff to recover one half of the $600 cost of the rear axle repairs in accordance with the terms of the

limited warranty set forth in the purchase order.[5] This being the case, the court's conclusion that there was not a substantial injury within the meaning of the third criterion is not clearly erroneous.

There is no error.

In this opinion HEALEY, SHEA and CALLAHAN, JS., concurred.

PETERS, C. J., concurred in the result.

---

[5] At oral argument before this court in *Web Press Services Corporation* v. *New London Motors, Inc.,* 203 Conn. 342, 350, 525 A.2d 57 (1987), the plaintiff acknowledged that "it made no attempt to have the axle repaired by the defendant but simply sought the return of the purchase price of the vehicle." The trial court found the stipulated cost of the rear axle repair to be $600 and rendered judgment for the plaintiff to recover one half of this amount or $300.