[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
In a four count complaint, plaintiff alleges the following:
The plaintiff is a Maryland corporation licensed to do business in Connecticut. The defendant is a Connecticut chartered mutual savings bank. On or about July 1, 1987, the plaintiff and defendant entered into an agreement pursuant to which the plaintiff would provide courier services for the defendant in parts of Connecticut for a period of two years beginning on July 1, 1987. These services were provided by plaintiff's drivers and supervisory personnel. Pursuant to paragraph 15 of the agreement, the defendant agreed not to hire any of these drivers or supervisory personnel for a period of twelve months following termination of the agreement. The agreement terminated on June 30, 1989.
Thereafter the defendant retained the services of W.R., Inc. to provide the courier services formerly provided by the plaintiff. W.R., Inc. had been under a lease agreement with the plaintiff until on or about May, 1989, pursuant to which W.R., Inc.'s principals and employees drove vehicles in performance and furtherance of plaintiff's agreement with the defendant. Plaintiff alleges in the first count that by retaining the services of W.R., Inc., the defendant breached the provision of paragraph 15, resulting in damages to the plaintiff.
This lease agreement with W.R., Inc., entered into by plaintiff's predecessor in interest (Central Delivery Service of Massachusetts, Inc.), contained a non-competition provision whereby W.R., Inc. promised not to provide courier services for any of plaintiff's customers or clients for a period of six months after W.R., Inc.'s termination of the lease. In May, 1989, W.R., Inc. terminated the lease with plaintiff and began providing courier services directly to the defendant, in violation of the non-competition provision of the lease agreement. CT Page 3207
On or about June 15, 1989, plaintiff and defendant agreed that if defendant used plaintiff's services in the greater Bridgeport area for one more year beginning on July 1, 1989, plaintiff would not seek to enjoin W.R., Inc. from providing similar services to the defendant in the greater Hartford area. Plaintiff did not seek this injunction. On or about October 11, 1989, the defendant informed plaintiff that it would completely discontinue its use of plaintiff's services, and since October 27, 1989 defendant has not used plaintiff's services. Plaintiff alleges in the second count that such action by the defendant constitutes a breach of the June 15th agreement, resulting in damages to the plaintiff.
In the third count plaintiff alleges that on or about June 15, 1989, the defendant promised the plaintiff that it would extend plaintiff's contract for one more year from July 1, 1989, in the greater Bridgeport area if plaintiff did not seek to enjoin W.R., Inc. from providing services to defendant in the greater Hartford area. Acting and relying on this promise, the plaintiff did not seek to enjoin W.R., Inc. for the six month period provided for in the lease between W.R., Inc. and plaintiff. On or about October 11, 1989, the defendant informed plaintiff that its services would no longer be used by the defendant, and since October 27, 1989 the defendant has not used plaintiff's services, in violation of its promise. As a result, the plaintiff has suffered damages.
The fourth count alleges that all of the foregoing acts constitute a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. sec. 42-110a et seq.
The defendant now moves to strike each count of the complaint for failure to state a claim upon which relief can be granted. Both parties have filed memoranda of law pursuant to Conn. Practice Book Sec. 155 (rev'd to 1978, as amended Oct. 1, 1989).
The defendant, in support of the motion to strike, argues that the contract underlying the claims in the first three counts of the complaint is unlawful, in violation of Conn. Gen. Stat. sec. 35-29. Defendant argues that the alleged non-competition provisions in the agreements between plaintiff and defendant, and plaintiff and W.R., Inc., constitute "tying arrangments" which are per se illegal in this case because they have a not insubstantial effect on commerce. In support of its claim that the effect is not insubstantial, the defendant states that the contract between plaintiff and defendant provides for weekly payments of $2,565.00, or $133,380.00 per year. The complaint does not allege any dollar amount CT Page 3208 pertaining to the contracts, and therefore defendant's provision of figures in its brief is an attempt to impart facts outside the complaint, which may not be considered by the court on a motion to strike. See Connecticut State Oil v. Carbone, 36 Conn. Sup. 181,182-83 (Super.Ct. 1979).
Defendant argues that the fourth count, alleging a CUTPA violation, should be stricken because a simple breach of contract, absent additional allegations of some conduct rising to the level of a CUTPA violation, does not violate CUTPA. finally, defendant argues that an allegation of a single act of misconduct is insufficient to state a claim under CUTPA.
The plaintiff argues in opposition to the motion to strike that the allegations of the complaint in no way set forth a contract in violation of either federal or Connecticut antitrust statutes. It argues that the complaint contains no language to suggest actual coercion by the plaintiff that forced the defendant to accept the services, or that the plaintiff had sufficient economic power in its market to coerce the defendant, or that the contracts were anti-competitive. Absent such allegations, plaintiff argues that there is no allegation of an illegal tying arrangement.
Plaintiff argues that its second count alleges not merely a simple breach of contract, but a "deliberate attempt from the inception of the agreement referred to in the second count to use the plaintiff's services not for a year but only until such time as the threat of an injunction against its new courier would be meaningless." For this reason, plaintiff argues that it can be inferred from the complaint that the act of the defendant was deceptive or unfair, and therefore a claim under CUTPA has been stated. Finally, plaintiff argues that a single alleged act of misconduct can constitute a violation of CUTPA.
A motion to strike tests the legal sufficiency of a pleading. Conn. Practice Book Sec. 152 (rev'd to 1978); Ferryman v. Groton, 212 Conn. 138, 142 (1989). If a plaintiff's complaint contains the necessary elements of a cause of action it will survive a motion to strike. D'Ulisse-Cupo v. Board of Directors, 202 Conn. 206, 218-19 (1987). A motion to strike admits all well-pleaded facts. Ferryman, 212 Conn. at 142. The court deciding a motion to strike is limited to the grounds specified in the motion, and should construe the challenged allegations in the light most favorable to the nonmoving party. Levenstein v. Yale University, 40 Conn. Sup. 123, 125 (1984). The court cannot look outside the pleadings for facts not alleged. Rowe v. Godou, 209 Conn. 273, 278 (1988). A motion to strike which alleges facts outside the pleadings is a CT Page 3209 "speaking" motion and will not be granted. Connecticut State Oil v. Carbone, 36 Conn. Sup. 181, 182-83 (Super.Ct. 1979).
Conn. Gen. Stat. sec. 35-29, Section 6 of the Connecticut Anti-Trust Act, states in part:
 Every lease, sale or contract for the furnishing or services . . . on the condition or understanding that the lessee or purchaser shall not deal in the services . . . of a competitor or competitors of the lessor or seller, shall be unlawful where the effect of such lease or sale or contract for sale or such condition or understanding may be to substantially lessen competition or tend to create a monopoly in any part of trade or commerce . . . and where such services are for the use, consumption or resale in this state.
This section, patterned after Section 3 of the Clayton Act,15 U.S.C. § 14 (1914), "concerns itself with price cutting, exclusive dealings, and tie-in arrangements, and prohibits the same when the effect of such arrangements `. . . may be to substantially lessen competition or tend to create a monopoly . . . .'" Brodigan, The Connecticut Antitrust Act, 47 Conn. Bar J. 12, 26 (1973).
A "tying arrangement" is found in an agreement where anyone party agrees to sell one product or furnish a service on the condition that the buying party also buy a second product or service, or not purchase that product or service from another supplier. State v. Hossan-Maxwell, Inc., 181 Conn. 655, 659
(1980). "Tying arrangements are among the small group of practices which courts have found to be `unlawful in and of themselves.' Northern Pacific Ry. Co. v. United States, [356 U.S. 1,5]." Id. at 660. This per se approach is based on the notion that such arrangements serve little purpose beyond suppressing competition. Id. However, under Connecticut law tying arrangements are per se illegal whenever (1) a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tried product or (2) a not insubstantial amount of commerce is affected.
In this case, defendant argues that the contract alleged by plaintiff is per se illegal because it has a not insubstantial effect on commerce. In determining whether the effect on commerce is not insubstantial, "`the controlling consideration is simply whether a total amount of business, substantial enough in terms of dollar-volume so as not to be merely CT Page 3210 de minimis, is foreclosed to competitors by the tie. . . ."' Houssan-Maxwell, Inc., 181 Conn. at 663 (quoting Fortner Enterprises, Inc. v. United States Steel Corporation, 394 U.S. 495,501). It is submitted that the first three counts of plaintiff's complaint do not allege a contract in violation of the Connecticut Anti-Trust Act. While the contract as alleged does involve a tying arrangement, the complaint contains no allegations from which it could be determined that the effect on commerce is not insubstantial. Aside from the fact that no dollar amounts are alleged in the complaint, the tying arrangement as alleged only prohibits the defendant from hiring any of plaintiff's drivers or supervisory personnel after termination of the contract. Under the terms of the contract as alleged, the defendant is free to contract with other carrier services not employed by plaintiff. Reading the allegations in the first three counts in the light most favorable to the plaintiff, they cannot be read to allege a per se illegal tying arrangement. Therefore, the motion to strike is denied.
The Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. sec. 42-110a et seq. prohibits unfair methods of competition and unfair or deceptive acts or practices in trade or commerce. Conn. Gen. Stat. sec. 42-110b(a). "Trade" or "Commerce" includes the sale of services. Conn. Gen. Stat. sec.42-110a(4). The Act, being remedial, is to be liberally construed Conn. Gen. Stat. sec. 42-110b(d). In determining whether an act or practice is unfair, the Connecticut courts have applied the three part test developed in FTC v. Sperry Hutchinson Co., 405 U.S. 233 (1972). This test is
 `(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise; . . . . (2) Whether it is immoral, unethical, oppressive or unscrupulous; (3) Whether it causes substantial injury to consumers (or competitors or other businessmen).'
Web Press Services Corp. v. New London Motors, Inc., 205 Conn. 479,482 (1987) (quoting FTC v. Sperry Hutchinson Co.,405 U.S. 233, 244-5 n. 5). CUTPA requires an allegation that plaintiff has suffered an ascertainable loss, and a single act may constitute a CUTPA violation. See Conn. Gen. Stat. sec.42-110g(a).
"CUTPA is a consumer protection statute intended to provide an individual with an action more flexible and a remedy more complete than does common law." Sprayform, Inc. v. CT Page 3211 Durant's Rental Centers, Inc., 39 Conn. Sup. 78, 79 (Super.Ct. 1983). The scope of CUTPA should be determined by "`The gradual process of judicial inclusion and exclusion."' Murphy v. McNamara, 36 Conn. Sup. 183, 189 (Super.Ct. 1979) (quoting FTC v. R.F. Keppel Bros., Inc., 291 U.S. 304, 312).
The allegation of a simple breach of contract is insufficient to state a cause of action under CUTPA. See Luong v. Roy, 16 Conn. L. Trib. No. 33, p. 32 (Super.Ct., July 23, 1990, Goldberg, J.); Sachs v. Magnotti, 1 CSCR 879 (October 27, 1986, Higgins, J.); Jarasek v. Chrysler House Associates Limited Partnership, 4 CSCR 73, 74 (December 2, 1988, O'Connor, J.). In counts one and two, plaintiff has alleged merely a breach of contract, and in count three, a claim based on promissory estoppel. Although the fourth count, the CUTPA claim, states that the acts complained of in the first three counts are immoral, oppressive, and unscrupulous, this is a legal conclusion, not a factual allegation which would support a CUTPA claim. Therefore, the motion to strike the fourth count is granted.
Accordingly, the motion to strike the first three counts of plaintiff's complaint is denied, and the motion to strike the fourth count is granted.
JOSEPH H. GOLDBERG, SENIOR JUDGE