[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has brought suit against the defendant attorney for the sum of $17,500, which he claims he delivered to the defendant in escrow for a deal to invest in an automobile agency with one David Rush. The amended complaint alleges actions under 42-110b (CUTPA) and 52-564. The defendant's answer admits that he represented Rush; that the proposed deal was not consumated and denies the remaining allegations of the complaint. The facts are found as follows. In 1990 Rush interested the plaintiff in buying an operating automobile agency and he attended a meeting in June 1990 with several other investors. Rush provided a letter outlining the arrangement, a subscription agreement, which had filled in 1.4 units, but was CT Page 7191 unsigned, a note to the seller auto agency for $400,000 signed by Rush, a guaranty of that note signed by Rush and another investor, and a guaranty to a Mrs. Traynor of a note for $150,000 signed by the plaintiff. All of the foregoing documents and agreement were drawn by Rush and the first mentioned letter stated that "The fund will be held in an escrow account by James A. Miller, Jr., Esquire, a member of the firm of Williams, Miller, Lyons Hawley in Fairfield. Should the acquisition and development of Rush Motors Inc. proceed your funds thereon will be applied towards the acquisition. In the event that the acquisition is not made your funds will be returned to you." The subscription agreement had similar language contained therein. Thereafter two of the plaintiff's checks totaling $17,500 were made payable to "James A. Miller Trustee," delivered to him and deposited to a "Trustee Account". The contract between Rush and Traynor Motors the seller, required a down payment of $150,000, and the plaintiff agreed that his money could be used for that down payment and in pursuance of the contract it was paid to an Attorney Lowe in escrow. However, it was returned in the summer of 1990 to the Miller Trustee account when the deal could not be consumated. Thereafter the defendant returned other funds which he had received in escrow in this deal, however when the plaintiff asked in early November for his money Rush agreed to tell Miller to return it but could not reach him. By letter of December 22, 1990 Rust told Miller to return the plaintiff's money. The plaintiff attempted to contact Miller but was unsuccessful and hired an Attorney Freedman to secure the money who also was unsuccessful. Subsequently Rush signed a promissory note payable to the plaintiff for $17,500 on which he defaulted and there is presently pending a suit on the note. When the plaintiff delivered his first check for $12,500 to Rush he accompanied it with a letter stating the payment was contingent upon his acceptance of the structure of the proposal, and he never accepted any proposed structure. When Attorney Freedman spoke to Attorney Miller on January 4, 1991, he told him that $15,000 was left in the Trustee account and he indicated that $2,500 had been paid to an attorney for preparing a lease of premises to be used for the new agency. On January 8, 1991 Miller told Freedman that he was in error in telling him the Trustee account had $15,000. While the subscription agreement of a similar investor as the plaintiff does not correspond exactly to the plaintiff's agreement it has similar language of an escrow account with the defendant and that investor did have his money returned by the defendant. It was not until Rush CT Page 7192 delivered the plaintiff's and other investors money to the defendant that he learned of the plaintiff. He did insert into Rush Motors File memorandums dated November 21, 1990 and November 23, 1990 about the funds he held on behalf of Rush Motors wherein he indicated that returning one investor's money would reduce the fund to less than the amount the plaintiff invested. Rush authorized him to use the fund for the defendant's fees and those funds would be replaced by Rush. The last memorandum to defendant's file indicated that the investors should participate in paying the defendant's fees. While the defendant testifies that he paid himself his fees from the Rush Motors escrow account on November 15, 1990, it is clear that he did not arrive at an agreement with Rush about the fees until November 21, 1990 and until that time the money $15,000 was in the Trustee account and the evidence so indicates.
An escrow is defined "as a written instrument which by its terms, imports a legal obligation and which is deposited by the grantor, promisor or obligor, or his agent with a stranger or third party, to be held by the depository until the performance of a condition or the happening of a certain event and then to be delivered over to the grantee, promisee, or obligee" 28 Am.Jur.2d 3, Escrow, 1; see White v. Bailey, 14 Conn. 271, 275; Tiffany; Real Property (3d Ed.) 1049. The instructions in this case were constructed and written by Rush in the letter describing the deal and the subscription agreement and provided some details of the deal and its ownership by the investors, and Palmer reserved 1.4 units in the corporation and the real estate partnership. However those agreements provided for the defendant to hold the funds in escrow to be returned should the acquisition not occur. It did contain in the letter a provision that if the acquisition and development of Rush Motor proceeded then the funds would be applied toward the acquisition. In fact the acquisition never took place and it was a condition of the escrow agreement that it should take place. While the defendant disclaims knowledge of the letter of intent and the subscription agreement he received the plaintiff's first payment made out to him as trustee and he as an experienced lawyer should have known that delivery of it to him as trustee meant that it was restricted money, or money on some condition or conditions. While the plaintiff authorized the use of his money for the down payment, when it was returned to defendant, all the original conditions applied to it, i.e. that it be held in escrow for the acquisition. Having drawn similar agreements for Rush in prior years with escrow agreements he should have realized that this CT Page 7193 money was on some condition. Rush had redrawn the defendants proposed agreements and documents of an earlier date and it was those that the plaintiff saw but not the defendant. In fact the defendant held all the money in the fund for a long time from July 7, 1990 to January 4, 1991, and he still retained it on the last date. He showed his acceptance of escrow money by his returning two other investors their money in October and November of 1990; and their arrangements were the same as the plaintiff's herein.
It is evident that the defendant knew or should have known that the checks for $17,500 were delivered to him on condition that the acquisition of Rush Motors be accomplished, a condition which he failed to observe. The plaintiff's complaint, count one and two, have been proved by a preponderance of the evidence. The plaintiff's money should have been returned to him and the defendant is therefore indebted to the plaintiff in the sum of $17,500.
The fourth count of the complaint alleges an action under52-564 which provides for treble damages for theft or receiving and concealing stolen property. No evidence has been produced upon which this court can base a finding of theft or receiving and concealing stolen property.
With respect to the third count under 42-110b a CUPTA claim the section involved reads as follows: "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." An unfair or deceptive act is defined as follows:
 In determining whether a practice violates CUTPA, the court should employ these criteria: "`(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]."' CT Page 7194
Sportsmen's Boating Corp. v. Helmsley, 192 Conn. 747, 756; Conaway v. Prestia, 191 Conn. 484 (1983); Web Press Services Corp. v. New London Motors, Inc., 205 Conn. 482 (1987). All three criteria need not be satisfied to support a finding of unfairness and the practice may be unfair because of the degree to which it meets some of the criteria or because to a lesser degree it meets all three. Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 242 (1987). Scienter is not a requirement for the establishment of a CUTPA violation. Web Press Services Corp., 205 Conn. 482. Under CUTPA it is not necessary that a plaintiff prove reliance or that the representation become part of the basis of the bargain. Hinchcliffe v. American Motors Corporation, 184 Conn. 607, 617 (1981). "For the plaintiff victimized by such conduct, CUTPA provides an action more flexible and a remedy more complete than did the common law." Hinchcliffe v. American Motors, supra, 617. See Noble v. Marshall, 23 Conn. App. 227. CUPTA has been applied to attorneys Heslin v. Connecticut Law Clinic, 190 Conn. 510, 521. In order to find an attorney liable under CUTPA the "cigarette rule" must be satisfied. Noble v. Marshall, supra, 229. The "cigarette rule" has been defined as the holding previously stated herein in Sportsmen's Boating Corp. v. Helmsley, supra, 756. Conaway v. Prestia, supra, 484. A.G. Foods, Inc. v. Pepperidge Farms, Inc., 216 Conn. 200, 215. The defendant attorneys conduct in failing to return the plaintiff's money does not come within any of the three acts provided by the "cigarette rule" nor to a lesser extent does it violate all three. The plaintiff has failed to establish by a preponderance of the evidence that his handling of the funds was unlawful, offended public policy or was within the prenumbra of established concepts of unfairness or (2) that it was immoral, unethical, oppressive and unscrupulous or (3) that it caused substantial injury.
Judgment may enter for the plaintiff to recover the sum of $17,500 together with interest from December 1, 1990 to date at the statutory rate, together with costs of the action under counts one and two. The attorneys fees and the costs of collection are denied since it is axiomatic that attorneys fees are payable only when contained in a contract or when allowed by statute. No legal bases has been stated for granting costs of collection and the facts necessary for an accounting have not been established. CT Page 7195
Judgment may enter for the plaintiff on counts one and two in accordance with the foregoing.
Judgment may enter for the defendant on the third and fourth counts.
LEVINE, S.T.R.