[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION
This is a seven count revised complaint involving the repair of a used automobile under the terms of an extended warranty. The plaintiffs claim: (1) breach of warranty, (2) violation of the Connecticut Unfair Trade Practices Act and, (3) conversion.
Counts three and six of the complaint were withdrawn as to the defendant Wynn Oil Co. prior to the start of trial to the court which began on March 24, 2000 and concluded on May 4, 2000. Only two witnesses testified: the plaintiff, Roger Hemingway, and Inspector Douglass Barrette of the Connecticut Department of Motor Vehicles. The defense did not call any witnesses. Several documents, including five repair invoices/work orders, were admitted into evidence.
At the conclusion of the plaintiffs case in chief the defendant moved for a judgement of dismissal as to the five remaining counts of the complaint. The court granted the motion to dismiss as to counts one and four, which relate to the defendant Champagne and Sons Lincoln — Mercury, Inc. The court found that the plaintiffs did not produce any evidence that this defendant was involved with the repair of the plaintiffs automobile. The court also found that there was no credible evidence produced from which the trier of fact could find or reasonably infer CT Page 6133 that Gem intentionally dispossessed the plaintiffs of their vehiclewithout their consent, or maliciously and unlawfully deprived the plaintiffs of the possession and use of their property, as specifically alleged in count seven of the complaint. Accordingly, the court granted the motion for judgement of dismissal as to that count as well. The motion for dismissal was denied as to counts two and five relating to the defendant GEM Chevrolet.
After carefully considering the pleadings, the evidence submitted, and assessing the credibility of the witnesses, the court finds the following facts to have been proven.
On November 5, 1994, the plaintiff's purchased and took delivery of a 1989 Eagle Premier automobile from Champagne and Sons/GEM Chevrolet, Inc. d/b/a Champagne Chevrolet Geo-Jeep-Eagle, Willimantic, Connecticut. The purchase price for the car was $6690, and the car had been driven 68,410 miles at the time of purchase. GEM Chevrolet provided the buyer with a standard 60 days or 3000 mile used car warranty.
At the same time that they purchased the used car, the plaintiffs also purchased a 24,000 mile or 24 month-extended warranty from the Wynn Oil Company for the sum of $n 450. The extended warranty limited the total liability of Wynn Oil Company to $3,000 for the repair or replacement of the engine, transmission, drive axle assembly, transaxle assembly, and power steering with new, used or remanufactured parts. Optional coverage for the air conditioner, fuel system and cooling system was not purchased by the plaintiffs. There is nothing within the four corners of the warranty which requires the owner to have the vehicle repaired at any particular repair facility. (Exhibit 1).
Mr. Hemingway testified that he began to experience mechanical problems with the car in June 1995. The complaint alleges that the vehicle was returned to the defendant on June 12, 1995; however, that claim is not substantiated by the documentary evidence. An invoice submitted by the plaintiff indicates the date of July 26, 1995 as the first time a repair order was opened for the car (Exhibit 2) at which time it was determined by GEM Chevrolet that the engine needed to be replaced. As of that date, the car had been driven approximately 22,000 miles since being purchased by the plaintiffs and had 90611 miles on its odometer.
A used engine was obtained from a salvage company on or about August 24, 1995 and installed in the plaintiff's car.(Exhibit 2) Wynn Oil Company made payment of $1,600 to GEM Chevrolet for the replacement of the engine pursuant to the terms of the extended warranty. The car was returned to Hemingway on or about September 25, 1995. No other repairs CT Page 6134 were made to the vehicle at this time.
The plaintiff returned the car to GEM Chevrolet on September 29, 1995 because it lacked power and was running rough. (Exhibit 3). The car had been driven 90651 miles at that time. GEM Chevrolet conducted an engine diagnosis and did a complete tune-up of the engine. They also replaced the thermostat and the thermostat housing, replaced a cracked fuel line, replaced the engine drive belt, replaced the flywheel, and replaced an axle. The car was returned to Hemingway on October 25, 1995.
The plaintiffs were given the use of a loaner automobile by GEM Chevrolet from September 18 until October 25, 1995. The plaintiffs were not charged for the use of the loaner car nor for any of the above-mentioned repairs.
On November 6, 1995, the car was again returned to GEM Chevrolet, this time because it was overheating. By this time the car had been driven 91953 miles. (Exhibit 4) The defendant replaced the catalytic converter and the heater core bypass as both were factory recall items. Mr. Hemingway testified that a second used engine was installed during this time but the documentary evidence does not support that testimony. (Exhibit 4). The car was returned to the plaintiff on December 28, 1995.
Thereafter, the plaintiff brought the car to Heat Tech, Inc. of Windsor, Connecticut because of the continuing overheating problem. Heat Tech installed a new radiator which did not resolve the problem. Heat Tech then examined the car and determined that there was a problem with the head. On January 12, 1996, the car was towed to GEM Chevrolet where it was confirmed that the replacement engine had a defective head and needed to be replaced. The car had been driven 92248 miles by this time but was still within the 24,000 mile-extended warranty. (Exhibit 5).
Gem Chevrolet obtained a second used engine from the salvage company on January 12, 1996, which was found to be defective as it was being installed into the car. The invoices from the salvage company indicate that another used engine was delivered to GEM Chevrolet on January 15, 1996 and was installed in the plaintiffs car.[1] (Exhibit 4) After replacing the engine, the car was road tested for 392 miles by the defendant. A notation on the invoice states: "This engine is operating 100% has been road tested 392 miles. No coolant is present in the oil this vehicle has a cooling system leak possibly in the heater core. . should not be driven untill(sig) it is repaired. . air can enter cooling system and cause overheating., damaging the engine." (Exhibit 5). The car was returned to the plaintiffs on or about February 5, 1996 with a milage reading of 92640 which placed it over the 24,000 mile extended warranty. The cooling system was not covered under the extended warranty. CT Page 6135
On February 6, 1996, the car was once again towed to GEM Chevrolet, this time due to a problem with the transmission. The car had on odometer reading of 92640 miles and was beyond the 24,000 extended warranty. (Exhibit 6) Nevertheless, the transmission was repaired and cleaned and the transmission fluid was replaced without charge to the plaintiff. On February 16, 1996, the car was towed at the request of the plaintiff, again without charge, from GEM Chevrolet to Bolles Motors in Ellington, Connecticut to address the previously reported overheating problem.
According to the plaintiff, Bolles Motors initially diagnosed the water pump as the cause of the overheating problem and replaced the water pump. When this did not resolve the problem Bolles Motors then concluded that the fan was not working. Plaintiffs called GEM Chevrolet about this and were told that the warranty had expired. At this point the plaintiffs decided to sell the car and purchase another vehicle, which they did.
Mr. Hemingway testified, and the documentary evidence supports the fact, that Wynn Oil Co. paid GEM Chevrolet $1600 for the replacement of the engine, and that the plaintiffs were not charged by GEM Chevrolet for any repairs done to the car. Hemingway also acknowledged that the Wynn Oil Company paid him $1400 which represented the balance of Wynn's liability of $3000 under the extended warranty.
The plaintiffs did not produce any credible evidence, other than that concerning the problem with overheating, which proved that the car in question was not mechanically sound or not operating properly subsequent to February 16, 1996, the last date GEM Chevrolet returned the car to the plaintiffs. Additionally, the plaintiff offered no credible or persuasive evidence to prove that the cause of the overheating was anything other than a problem with the cooling system, which was not covered under the extended warranty. No testimony or documentation from Bolles Motors, or any certified automobile mechanic or repair facility, was offered by the plaintiffs concerning the condition or operation of the vehicle.
Douglass Barrette, an inspector for the Connecticut Department of Motor Vehicles testified that he was assigned to investigate a complaint from the plaintiffs regarding the delay by GEM Chevrolet in repairing the car. This complaint was filed with DMV on October 24, 1995. Barrette testified that while it was unusual for a vehicle to be in for repair for one to two months, a possible cause for the delay could have been difficulty in obtaining a replacement engine for that particular vehicle. DMV closed the case after the car was returned to the plaintiffs on CT Page 6136 October 25, 1995. The case was reopened in 1996 because of the number of times the car was being returned to GEM for repairs. Barrette also stated that it was unusual for a car to be road tested for 390 miles; however, Barrette also testified that, "[Gem Chevrolet] put a considerable amount of time into this vehicle."
The Department of Motor Vehicles closed the case against GEM Chevrolet in March 1996 after learning that the repairs were being made under an extended warranty. Barrette said that DMV does not have jurisdiction over repairs made to a used car under an extended warranty. He also stated that DMV did not have sufficient evidence to be able to determine the cause of the mechanical problems being experienced by the plaintiffs. No administrative action was taken against GEM Chevrolet by the Department of Motor Vehicles.
Counsel for the plaintiff argues that since the court found that the plaintiff had presented a prima facie case as to the second and fifth count of the complaint, and since the defendant did not present any evidence subsequent to that ruling by the court, the court must necessarily enter judgement for the plaintiffs as to those two counts. The court disagrees.
The question of whether the plaintiff had presented a prima facie case was a close call for the court in this case. Only after reviewing the evidence and more importantly the applicable caselaw did the court deny the motion as to the second and fifth count.[2]
Submitting evidence sufficient to overcome a motion for judgement of dismissal is not the equivalent of meeting the burden of proof. "A motion for judgment of dismissal has replaced the former motion for nonsuit for failure to make out a prima facie case . . . The right of the court to grant such a motion is to be sparingly exercised. . . Where the granting of a nonsuit must depend in any appreciable degree upon the court's passing upon the credibility of witnesses, the nonsuit should not be granted. Where a case is close, the preferable course is to deny a motion for a nonsuit." (Citations omitted; internal quotation marks omitted) Thomas v. West Haven, 249 Conn. 385, 391, (1999)
"A prima facie case, in the sense in which that term is relevant to this case, is one sufficient to raise an issue to go to the trier of fact. 9 J. Wigmore, [Evidence (4th Ed. 1974)] § 2494, p. 379. In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove: see C. Tait J. LaPlante, [Connecticut Evidence (2d Ed. 1988)] § 4.3, p. 72. In evaluating a motion to dismiss, [t]he evidence offered by the plaintiff is to be CT Page 6137 taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiffs] favor" (Internal citations and quotation marks omitted.)Thomas v. West Haven, supra at 392. In the final analysis it is the trier of fact who must assess analyze and weigh the credibility and sufficiency of the evidence before determining whether the plaintiff has met the applicable burden of proof.
The major problem with the plaintiffs case is a paucity of evidence. On several occasions the court found the testimony of Mr. Hemingway to be inconsistent with some of the documentary evidence submitted by the plaintiffs. Additionally, the plaintiffs chose not to call any of the defendant's employees to testify regarding what the defendant had or had not done to the car, or why the defendant took so long to make the repairs reflected on the invoices, or why they needed to road test the car for 392 miles. Indeed, the plaintiff chose not to offer any evidence from anyone who had examined or worked on the car, including the Gem Chevrolet, Bolles Motors, and Heat Tech employees. The result is that there are more questions than answers.
Motor Vehicle Inspector Barrette did not testify that anyone from DMV had ever examined the plaintiffs car, interviewed GEM Chevrolet employees concerning the repairs of the car, or reviewed invoices or work orders. He did not know why it took so long to complete the repairs on the car or why it was road tested for 392 miles, and apparently did not ask.
 BREACH OF WARRANTY AS TO DEFENDANT GEM
The Second Count of the complaint charges that the plaintiffs were "induced to purchase said optional extended warranty based on the representations of the Defendant Champagne that said warranty would,inter alia, cover any mechanical problems with the automobile for a period of two years or 24,000 miles from the date of sale."(Revised Complaint — Second Count) The court finds no credible proof that any such inducement or representation was made.
The plaintiff also alleges that pursuant to the terms of the warranty issued by Wynn Oil Company, GEM Chevrolet was to make all necessary repairs to Plaintiffs vehicle, and that GEM Chevrolet refused to repair the vehicle in violation of the express warranty. The evidence submitted does not support that claim. There is nothing within the four corners of the extended warranty that required the plaintiffs to bring the car to GEM Chevrolet for repairs or that GEM Chevrolet was to make all necessary repairs to the vehicle. CT Page 6138
The plaintiffs also claim that "despite all reasonable efforts to have the vehicle in question repaired, the vehicle remained inoperable." The evidence is that when he last received the car from GEM on February 16, 1996, the car was operating properly except for the problem with overheating, which was not covered under the extended warranty. The plaintiff has not proven by a fair preponderance of the evidence that the continuing problem of the car engine overheating was the result of a failure of any of the mechanical systems covered by the extended warranty or any by any act or omission on the part of the defendant. The problem may or may not have been the result of an inoperative fan.
The plaintiffs further allege a violation of Conn. Gen. Stat. §42a-2-314 which provides that "[u]nless excluded or modified as provided by section 42a-2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . ." For goods to be merchantable, they must be "at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purpose for which such goods are used. . . ." The plaintiff has not proven that any of the parts used by the defendant to repair the car were defective or if found to be defective was not replaced by the defendant at no cost to the defendant. There is no credible evidence that any part installed in the car would not pass ordinary inspection, or was not of average quality, or was not fit for the purposes for which it was used.
Finally, the plaintiff argues in his trial memorandum that the defendant is in violation of a 90 day or 4,000 mile warranty on the used engine (Exhibit 2). There are two problems with that argument. First, the plaintiff failed to include that claim in his pleadings and, second, the plaintiff has not produced sufficient credible evidence to prove that the replacement engine is the cause of the problem.
Judgement shall enter for the defendant as to the Second Count the revised complaint.
 CONNECTICUT UNFAIR TRADE PRACTICE ACT AS TO DEFENDANT GEM
The fifth count of the revised complaint alleges a violation of the Connecticut Unfair Trade Practice Act.
Conn. Gen. Stat. § 42-110b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The criteria for deciding CUTPA claims is articulated by the Supreme Court in HartfordCT Page 6139Electric Supply Co. vs. Allen-Bradley Co., 250 Conn. 334, 367-368
(1999): "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the "cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Moreover, this court has set forth a three-part test for satisfying the substantial injury criterion: "[1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves, could not reasonably have avoided." (Internal quotation marks omitted.) See: McLaughlin Ford,Inc. v. Ford Motor Co., 192 Conn. 558, 569-70, 473 A.2d 1185 (1984); WebPress Serv. Corp. v. New London Motors, Inc., 205 Conn. 479, 484 (1987).
The essence of the plaintiffs claim is that the defendant was required to make all necessary repairs to the plaintiffs vehicle under the terms of an extended used car warranty purchased from a third party and that the defendant failed and refused to repair the vehicle despite having the vehicle for extended periods of time. Also, the plaintiffs claim that the defendant extensively test drove the vehicle causing the vehicle milage to extend beyond the warranty limits, and that the defendant thereafter refused to honor the warranty.
The court finds that the plaintiffs have not proven these allegations by a fair preponderance of the evidence presented. The facts are that the defendant was not required to make all necessary repairs to the car under the terms of the extended warranty. The repairs authorized under the warranty were limited to specific components of the car. Furthermore, the defendant was not obligated at all to repair the car at all under the terms of the extended warranty. Any licensed repair facility open to the public could have been used by the plaintiff under the express terms of the contract. Finally, the evidence is that the defendant did make repairs to the plaintiffs vehicle after the expiration of the extended warranty, at no cost to the plaintiffs.
While the defendant did have the car in its shop for long periods of time, the facts indicate that the plaintiffs were given the use of a CT Page 6140 loaner car for approximately six weeks, and the work done to the vehicle, while the extended warranty was in effect and after it had expired, was not only substantial, but resulted in no cost to the plaintiffs nor claim under their extended warranty. The result was that not only were repairs done to the car, but the plaintiffs received a $1400 cash payment representing the balance of the $3000 value of the extended warranty.
The court finds that the plaintiffs have not proven by a fair preponderance of credible, persuasive evidence that the acts complained of offend public policy, or are immoral, unethical, oppressive, or unscrupulous. Additionally, the court finds that the evidence presented does not prove that the plaintiffs sustained any substantial injury that was not outweighed by countervailing benefits received.
The court finds that the plaintiffs have not satisfied their burden of proof that the defendant has violated the Connecticut Unfair Trade Practices Act. Judgement shall therefore enter for the defendant as to Count Five of the revised complaint.
 Terence A. Sullivan Superior Court Judge