[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Interbank of New York (Interbank), brought this action for collection on a promissory note executed by the defendant, Christina Foster. Foster acknowledges making the note. She asserts by way of special defenses, however, that Interbank should be barred from collecting on the note because the transaction was illegal. At the May 10, 2002 trial of this matter, Interbank was represented by legal counsel; the CT Page 9810-as defendant was pro se.
Key issues to be decided by the court are: 1) Whether certain extraneous documents executed by Foster contemporaneously with the note, but not specifically referenced in the pleadings, are enforceable; 2) Whether this transaction is subject to the Truth in Lending Act so that noncompliance with that act by Interbank renders the loan illegal; and 3) If Interbank is entitled to judgment on the note, what are reasonable attorneys' fees?
 FACTS
In 1999, Interbank employed Foster as a residential mortgage loan originator. It was her job to complete loan applications with customers and turn the application forms over to the processing department to ascertain validity. On June 24, 1999, Foster completed a credit application on her own behalf, seeking $25,000 from Interbank to "renovate bathrooms/kitchens/heating windows" at an unspecified address. The application was for a sixty-month installment loan. On the credit application Foster recited 485 Ferry Street, New Haven, Connecticut as her residential address. She also described ownership of a one-family rental property at 216 Dwight Street and a condominium unit rental property at 1730 State Street. In fact, Foster did not reside at 485 Ferry Street at the time of the application and has never lived at that address.
Since those sections of the credit application requiring information for "automobile loan," "home improvement loan," and "secured personal loan" are all left blank, it appears that the application was for an unsecured personal loan. No part of the application makes reference to the securing of the loan by mortgage. No part of the application specifies a proposed interest rate for the loan.
On August 11, 1999, Interbank loaned the requested $25,000 to Foster. Foster executed a promissory note that read exactly as follows:
PROMISSORY NOTE (Schedule "B")
$25,000.00 Astoria, New York August 11, 1999
For value received, the undersigned promises to pay to the order of Interbank of New York, its successors and/or assigns, located at 31-01 Broadway, Astoria, New York 11106, the principal sum of TWENTY FIVE THOUSAND and 00/100 ($25,000.00) with interest at 8.00% percent per annum CT Page 9810-at (Annual Percentage Rate 8.1115%), together with all costs, including reasonable attorney fees incurred in collecting or enforcing the obligation of this Note.
Said principal and interest shall be due and payable on or before September 1, 2004. Said amount is payable sixty (60) successive monthly installments, the first payment in the amount of $510.65 due October 1, 1999 each subsequent payment in the amount of $510.65 due to the same day of each month thereafter and a final payment of $510.65 due on September 1, 2004. A loan amortization schedule is attached hereto and made a part hereof, entitled Schedule "C".
The Maker may prepay this NOTE in whole or in part at any time without penalty; provided, however, that no such partial prepayment of the principal sum shall in any way release, discharge or affect the obligation of the Maker to pay the entire outstanding principal balance hereof on the date aforesaid.
Presentment for Payment, Protest and Notice of dishonor are hereby waived by all parties hereto who agree that the time for payment of all or any portion or portions of the obligation represented by this Note, or the enforcement of said obligation, may be extended or delayed from time to time, by the Holder or Payee hereof without prejudice to the liabilities of the parties hereto and without notice to any of them.
This Note and all terms, conditions and provisions herein contained shall be governed and construed in accordance with the laws of the State of Connecticut.
 Christina E. Foster /s/ ___________________ CHRISTINA E. FOSTER
Despite the reference in the note to "Schedule C," there was no attachment to the promissory note.
 I
In addition to the promissory note, Foster signed two other documents on August 11, 1999. The first was a memorandum from Marios Ioannou to Foster "Re: Your Installment Loan Application." The memo advises Foster that her "application, in the principal amount of $25,000 repayable in 60 monthly installments, together with interest thereon at 15.5% annum [sic], has been approved with the provision that, as long as you remain CT Page 9810-au employed by Interbank of New York, interest charged on your loan will be reduced to 8.00% per annum." The memo further states that the rate will increase to fifteen and one-half percent effective the day after termination of Foster's employment. Acknowledging that she has "read, understood, and agreed" to the memo, Foster signed it. The memo does not identify Marios Ioannou by position or authority, nor does it make any reference to the promissory note.
Interbank did not make any reference to the existence of this memorandum in its pleadings nor claim its enforceability in its complaint. Interbank explicitly sued only on the promissory note. The pleadings aver no extraneous documents or obligations. Nevertheless, Interbank claimed at trial that the rightful interest on the promissory note as of March 1, 2000, was fifteen and one-half percent rather than the eight percent of the promissory note because Foster's employment terminated on February 17, 2000. The court finds that the only interest due on the note was eight percent. The court will not grant relief on factual allegations that have not been noticed in the complaint or pleaded by the plaintiff. "A plaintiff's right to recover has traditionally been based on the allegations made in his complaint." WebPress Services Corp. v. New London Motors, Inc., 203 Conn. 342, 359,525 A.2d 57, following remand, 205 Conn. 479, 533 A.2d 1211 (1987). "A plaintiff cannot recover on a state of facts which was not pleaded. . . ."Willametz v. Guida-Seibert Dairy Co., 157 Conn. 295, 303, 254 A.2d 473
(1968). "It is still the law that the right of a plaintiff to recover is limited by the allegations of the complaint." Strimiska v. Yates,158 Conn. 179, 185, 257 A.2d 814 (1969).
The second document executed by Foster on August 11, 1999, was a mortgage deed. That deed seemingly was intended by Interbank to secure the $25,000 loan by a mortgage on the real property owned by Foster at 483-485 Ferry Street, New Haven, Connecticut. The mortgage deed is, however, blatantly defective and unenforceable against Foster or her property on Ferry Street. The mortgage deed executed by Foster entirely reverses the roles of Interbank and Foster. It names Interbank as the mortgagor responsible for paying all monies on the loan, all taxes and all insurance at the property. It also names Interbank as the mortgagor responsible for payment of the entire unpaid balance due under the $25,000 promissory note. Interbank as mortgagor also grants the Ferry Street property to Foster as mortgagee with mortgage covenants. Despite the absurdity of this mortgage deed, there was testimony that Interbank caused the deed to be recorded on the New Haven land records and has refused to release it. Apparently, that document continues to cloud Foster's title to the Ferry Street property. CT Page 9810-av
Foster raised the issue of the obnoxious mortgage deed as a special defense. Despite her testimony that the cloud on her Ferry Street property has prevented her from refinancing the property, she did not quantify her damages. She did not plead by way of counterclaim or setoff any monetary loss because of the persistence of Interbank in leaving the deed unreleased. Just as the court will not grant relief to Interbank on documents and facts omitted from its pleadings, so also the court will not manufacture a counterclaim that is not set forth by Foster. "Facts found but not averred cannot be made the basis for a recovery." Malonev. Steinberg, 138 Conn. 718, 721, 89 A.2d 213 (1952). "[A]ny judgment, to be adequate as such, must conform to the pleadings, the issues and the prayers for relief." Verraster v. Tynan, 152 Conn. 645, 648, 211 A.2d 150
(1965).
 II
The mortgage deed forms the basis for Foster's claim that the entire loan transaction was illegal. Foster admits that she received $25,000 from Interbank on August 11, 1999. She admits the execution of the promissory note agreeing to repay the money in sixty monthly installments at eight percent interest. She admits that she stopped making payments after December, 1999, when principal of $24,432.50 was still outstanding. Foster asserts by was of special defense that Interbank is barred from collecting on the note because of Interbank's violation of truth in lending laws. In particular, Foster claims that Regulation Z;12 C.F.R. § 226.1 (C)(1); promulgated under the authority of the Truth in Lending Act (TILA); 15 U.S.C. § 1601 et seq; applies to this transaction. Interbank provided to Foster none of the information or documents required for compliance with Regulation Z, such as a three-day rescission notice.
The purpose of the Truth in Lending Act is to promote "the informed use of credit" by assuring "meaningful disclosure of credit terms" to consumers. 15 U.S.C. § 1601. Congress imposed upon the Federal Reserve Board the duty to explain and elaborate upon the language of the act by way of regulation. 15 U.S.C. § 1604. Regulation Z,12 C.F.R. Part 226
is that regulation and controls certain consumer transactions. See Mourning v. Family Publications Service, Inc., 411 U.S. 356,93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). In order for TILA to apply to the Foster loan, Foster must fit the definition of "consumer" in Regulation Z. If she is a consumer within the meaning of the act, then it must further be shown that the primary purpose of the loan was personal, family or household expenditures, rather than business. CT Page 9810-aw15 U.S.C. § 1602 (h); 12 C.F.R. § 226.2 (p).
For purposes of the rescission notice requirement, Regulation Z defines "consumer" to include "a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest." 12 C.F.R. § 226.2 (a) (11). Since Interbank attempted to acquire a security interest in the real property at 483-485 Ferry Street, New Haven, the question is whether that address was Foster's principal dwelling.
A special defense is a pleading setting forth allegations of fact to show that the plaintiff has no cause of action. Since it is the defendant who makes the allegations of the special defense, it is she who bears the burden of proof. It is Foster who must produce evidence that the Ferry Street property was her principal dwelling and that the Interbank loan was a consumer loan. In a truth in lending violation claim, it is the putative consumer who bears the burden of showing that the transaction in question is a consumer credit transaction, not a business transaction. "It is an elementary rule that whenever the existence of any fact is necessary in order that a party may make out his case or establish his defense, the burden is on such party to show the existence of such fact." (Internal quotation marks omitted.) Nikitiuk v. Pishtey, 153 Conn. 545,552, 219 A.2d 225 (1966); Citizens Assn. v. Bridgeport, 84 Conn. 383,387, 80 A. 203.
Foster admits that she has never resided at the Ferry Street property. She asserts, however, that at the time of the loan she intended to reside there at some time in the future. She says that the property has never been rented to others, and, therefore, it cannot be considered a business property. She claims further that because Interbank failed to prove that Ferry Street was a business property rather than a residential property, the property must be looked upon as her residence. Foster misplaces the burden of proof. It is she who has failed to sustain her burden of proof that the Ferry Street property was her principal dwelling. Likewise, she failed to offer sufficient evidence to show that the purpose of the loan was personal, family or household. Foster was not a consumer as defined by Regulation Z. The August 11, 1999 loan to Foster, therefore, was not a transaction subject to Regulation Z.
 III
The promissory note executed by Foster pledges her to pay "reasonable attorney fees incurred in collecting or enforcing the obligation of the CT Page 9810-ax Note." Interbank has presented an affidavit of its attorney's fees claiming $4,776.75. The affidavit has certain deficits. First, it is in paragraph form and contains no itemization of dates and times for specific services. Second, it asserts in the paragraph describing the legal services of the Interbank attorney that telephone conferences and correspondence with certain persons related to a foreclosure action. Such a foreclosure action is not part of this case. Indeed, if the foreclosure action in question had anything to do with the mortgage deed placed by Interbank upon Foster's Ferry Street property, then the claim for any attorney's fees on that matter would be not only erroneous, but outrageous.
In addition to its review of the affidavit of fees submitted by Interbank's counsel, the court makes note that the court file is devoid of pleadings beyond the complaint, the answer/special defenses, the reply to special defenses, and the claim for trial. Since the current Interbank attorney in this matter is substitute counsel, he did not draft the complaint or cause it to be served. The trial took less than half a day and consisted of testimony from a bank officer and the defendant. The most time-consuming element of this case for Interbank has been the court's requirement of a brief from the parties on Regulation Z as it might apply to this matter. A list of services submitted by an affidavit of the plaintiff's legal counsel plus the court's review of the file and personal knowledge of the proceedings plus the court's own general knowledge may provide sufficient bases for the court to decide the amount of reasonable attorney's fees. Appliances, Inc. v. Yost, 186 Conn. 673,681, 443 A.2d 486 (1982).
 CONCLUSION
Having defaulted in the repayment of her loan from Interbank, Foster owes a principal balance of $24,432.50 plus interest at eight percent ($5.3551 per diem) from December 1, 1999 to the present. The total interest is $5,178.35. Interbank is not entitled to collect interest at fifteen and one-half percent in this action. The Truth in Lending Act and Regulation Z do not apply to this transaction. Based upon the information available to the court, reasonable attorney's fees are awarded in the amount of $3,060.
Judgment shall enter in favor of the plaintiff, Interbank, in the amount of $32,670.85.
 _________________ Winslow, J.
CT Page 9810-ay